BELATTI, Appellant, v. WESTERN GRAIN DEALERS MUT.
FIRE INS. CO. of Des Moines, Ia., Respondent

(236 N. W. 367.)

(File No. 6754.   Opinion filed May 4, 1931.)

*M. J. Russell,* of Watertown, for Appellant.
*Walter Stover,* of Watertown, for Respondent.

WARREN, J.   Action by plaintiff to recover for a fire loss
under a statutory fire insurance policy issued December 19, 1925,
by the defendant to the plaintiff and appellant, Severi Belatti.

The defendant is a mutual fire insurance company with head-
quarters in Des Moines, Iowa.   It has a general agent in South
Dakota and a local agency at Lake Norden, S. D.   The plaintiff
at one time owned the West Hotel at Watertown, S. D., which
hotel was sold in December, 1923.   He received back as a part of
the consideration a note and mortgage for $15,000, executed by one
Victor M. Belatti and one Russell R. Riddell.   The note and mort-

gage seem to have been executed in California where the Belatti family, or part of it, was then residing; said note being made payable to the plaintiff and his wife, Anna Belatti. The plaintiff testified that his wife had no financial interest in them. The note remained unpaid, and after it fell due the plaintiff and his wife brought an action of foreclosure against the property for the amount due upon the note and mortgage and secured a judgment of foreclosure on July 13, 1925. Thereafter, and pursuant to said judgment and decree of foreclosure, the West Hotel property on the 18th of August, 1925, was sold to the plaintiff and his wife, Anna Belatti, and sheriff's certificate of sale was issued to them jointly.

On or about September 13, 1926, the plaintiff and Anna Belatti received a sheriff's deed under the mortgage foreclosure. While the plaintiff and his wife were the holders of the sheriff's certificate of sale to the mortgaged property and shortly prior to December 19, 1925, and before the sheriff's deed issued, one Higgins, defendant's local agent, called upon Severi Belatti with the view of insuring the West Hotel. It is contended by the plaintiff that the plaintiff discussed the foreclosure proceedings and the title to the property with said Higgins, and that the plaintiff as sole owner of the property took insurance in the defendant company on the hotel property in the amount of $7,500, and thereafter the policy of insurance substantially in the statutory form against fire was issued by the defendant company on December 19, 1925, to expire one year later.

The defendant contends that some time in July, 1926, it received a letter written to the recording state agent at Sioux Falls, S. D., which letter had been written by some one in plaintiff's family. The letter read as follows:

"On December 21, 1925, your agent, P. H. Higgins, wrote three policies for me on the West Hotel, policies numbers 2T 12944 AM Mutual, No. 43938 AM Mutual, No. SA 399 W. G. Dealers, (the policy sued on herein being SA 399). I tried to impress on him at that time and later that the hotel's title was in the name of Jacob Ritz and that I held a mortgage on the same for $15,000.00, and that I wanted my mortgage insured. I understand the policys should have been taken out in Ritz's name with a mortgage clause in my favor, but the insurance was taken out in my

name. Kindly inform me if this policy would be good in case of loss and advise me if it is not. , Yours very truly,

"S. Belatti by Son."

The plaintiff in substance denies the writing of the letter, but, upon close questioning by counsel relating to the letter, he stated:

"Q. Is it not a fact that the letter was written to the company by your son? A. The letter was written by my son, I don't know about that.

"Q. What son was it that attended to this for you, Mr. Belatti? A. It was a fellow named Ray Belatti.

"Q. Your boy? A. Yes, sir.

"Q. Handled a lot of your business matters for you, hasn't he? A. Not very much.

"Q. Just answer the question. A. Well, yes, sometimes.

"Q. And he handled a lot of matters in connection with this hotel, did he? A. Yes."

After the letter in question had been written and on July 20, 1926, a letter was written directed to the plaintiff, Severi Belatti:

"RE: Policies 12944—43938—SA399.

"We have for acknowledgement your favor of the 18th calling attention to the fact that the above mentioned policies have been incorrectly written, and we herewith enclose endorsements to be attached to the policies correcting the name of assured and containing mortgage clause in your favor.

"We will ask that you attach these to the policies, we have attached like copies to our record.

"We trust that this takes care of the matter to your entire satisfaction. Yours very truly,

"State Mutual Underwriters,

"W. W. Williams,

"Underwriting Department."

There was enclosed an indorsement on the usual form, which reads as follows: "An error having occurred in writing the name of assured under this policy as Severi Belatti in place of Jacob Ritz, this endorsement is attached covering the same. Dated, July 21st, 1926"—and with the letter a South Dakota statutory mortgage form with full contribution. This letter with the inclosures was received and kept by the plaintiff or his attorney until the time of the trial.

No notice ·in the change of ownership after the issuance of said indorsements 'was ever given to the defendant company, even though the plaintiff and his wife acquired a sheriff's deed to the premises some two months after the issuance of said indorsements.

On October 5, 1926, the property insured was partially destroyed by fire. After the fire and on November 30, 1926, a proof of loss was prepared and sworn to by the plaintiff. In the proof of loss the plaintiff stated he was the owner of the property. As soon as the defendant discovered that plaintiff had become the owner of the property before the fire and that the defendant's right of subrogation under the mortgage clause with full contribution had been destroyed by virtue of said change of ownership, it tendered to the plaintiff the amount of premium that had been paid to it and denied all liability.

It is contended that the plaintiff could neither read nor write and did not know the meaning of plaintiff's exhibits in the form of indorsements or the contents thereof, but simply kept them with his policies, and that he did not authorize anybody to change the policy, and that the letter written to the company was unauthorized. Plaintiff further contended that he had an insurable interest in the hotel by being holder of a sheriff's certificate of sale and that he was not obliged to notify the defendant when he and his wife received the sheriff's deed.

The policy contained a number of specific requirements; the following are essential to our consideration (which we obtain from respondent's brief):

"South Dakota Standard Mortgage Clause with Full Contribution.

"Loss or damage, if any, under this policy shall be payable to Severi Belatti, Watertown, South Dak., as mortgagee (or trustee), as interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act of neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other procedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for the purposes more hazardous than are permitted by this policy; * * * Provided also that the mortgagee * * * shall notify this company of any change of ownership or occupancy or increase of

hazard which shall come to the knowledge of said mortgagee * * * and unless permitted by this policy it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. * * *

"Whenever this Company shall pay the mortgagee * * * any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee * * * the whole principal sum due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee * * * to recover the full amount of his claim."

Change of title has been treated by a number of courts, and our own court has treated the matter, while not precisely on change of ownership by receiving a sheriff's deed as in the instant case, however, it did treat the subject of title in Smith v. Retail Merchants' Fire Insurance Co., 29 S. D. 332, 137 N. W. 47, 48, 42 L. R. A. (N. S.) 173, quite fully as follows: "There is nothing in the complaint of intervener that would indicate that defendant had any knowledge that Walker was such a trustee, or any knowledge that Walker had any other or different title or interest than that of absolute ownership. By the very terms of the assignment itself Walker was assigned 'the interest of M. A. Satter as owner of the property covered by this policy,' which was the interest of unconditional ownership. What interest Walker in fact had was very material to defendant, and of which it had the right to be truly informed. One who insures property as owner in case of loss cannot recover under such policy for property held by him as trustee, in the absence of some special provision therefor in the policy. 19 Cyc. 669-696; Corkery v. Security F. Ins. Co., 99 Iowa, 382, 68 N. W. 792; Fuller v. Phoenix Ins. Co., 61 Iowa, 350, 16 N. W. 273; McCormick v. Springfield F. & M. Ins. Co., 66 Cal. 361, 5 P. 617; Milling Co. v. Insurance Co., 25 Mo. App. 259; Bradley v. Insurance Co., 90 Mo. App. 369. The assignment of said stock of

merchandise to the Bank of Carthage, without the consent of defendant, had the effect of changing the interest and title of the subject of insurance so as to render the policy void."

Upon an appeal from the trial and in reversing the trial court, our court held: "In this case there was a complete change of title, interest, and possession on the 27th day of January—more than three months before the appointment of the plaintiff as trustee or the destruction of the insured property. It may be, as claimed by respondent, that the transaction between Satter and Walker did not constitute a valid assignment under our statute for the benefit of creditors; but Satter divested himself of title to the property and surrendered the absolute possession to Walker, and Walker proceeded to exercise possessory rights over the property. Whether he became an assignee under the statute is wholly immaterial. He at least took and held the property as trustee subject to the rights of Satter's creditors, and, until such creditors were satisfied, Satter had no title to the property nor the right of possession thereof. * * * In fact, when the property was turned over to him, the very contingency arose that was intended to be guarded against by the above provision in the policy; and when that contingency arose, the policy became void, and the defendant was no longer liable thereon." Smith v. Security Mutual Fire Insurance Co., 37 S. D. 418, 158 N. W. 991, 992.

There is abundant authority to sustain respondent's contention that it was not liable on the policy in question for the reason that it was not advised of the change of ownership.

Some two months after the riders and indorsements had been delivered to the plaintiff, the sheriff's deed was issued to the plaintiff and his wife, as grantees, making a complete change of ownership within the meaning of the law governing an insurance risk. This view of the law is fully supported by able authorities covering statements of facts almost identical to the instant case:

"After the policies were issued, Pomeroy conveyed his interest in the premises by quitclaim deed to Foote, the plaintiff, and at the same time took back a bond for a reconveyance of the same to him, his heirs and assigns, upon the payment of a sum named, which was just the amount then due on his two mortgages. The bond was not acknowledged or recorded, and the defendants had

no notice of the existence of either the deed or the bond until after the fire.

"After the delivery of the deed and bond, and until the fire, in November, 1873, Pomeroy occupied a part of the building without payment of rent, paid taxes, made repairs, controlled the occupation of the other tenants, and up to June, 1873, collected the rents and paid them over to the plaintiff. After that, the plaintiff collected the rents, but had nothing else to do with the premises.

"The debts secured by the original mortgages had not been paid, the securities were not taken up, and were not discharged, otherwise than as affected by the giving of the quitclaim deed and the bond.

"We are of opinion that Pomeroy's deed effected a change of title and possession in the property insured, within the meaning of these policies. The absolute record title passed by it to the plaintiff. He could convey the land, and give a good and indefeasible title as against Pomeroy. It was subject to attachment for his debts. He had all the rights, and was subject to all the liabilities, of owner as to all persons but Pomeroy. In these respects, the plaintiff's power over the land was greater than that which he had before the deed, as mortgagee. On the other hand, Pomeroy parted with all power to convey as mortgagor, and all right to enforce or defend his title against a stranger. In these and other respects, he had not the same title which a mortgagor has in law and in equity under a recorded mortgage. The deed carried with it also a legal change of possession, notwithstanding the grantor remained in the occupation of part or the whole of the premises.

"The force of these considerations is not controlled by the suggestion that upon the production of the unrecorded bond of defeasance the deed would not in equity, as between the parties to it, be allowed to change the existing relation of mortgagor and mortgagee, so as to give an absolute title to the grantee. The question is as to the effect of the transaction upon a party without notice, who has an interest in the property by virtue of a contract of insurance, and who has stipulated that no change of title shall be made. The statute declares that an absolute conveyance shall not be defeated or affected by an unrecorded defeasance 'as against any person other than the maker of the defeasance or his heirs or

devisees, or persons having actual notice thereof'; Gen Sts. c. 89, § 15; and it has been decided that one who holds under such a conveyance, but who has given an unrecorded bond of defeasance under which his grantor remains in possession, is liable as owner to be proceeded against for damages under the mill act. Hennessey v. Andrews, 6 Cush. [Mass.] 170. The decision is put solely upon the ground that by the statute the defeasance is wholly inoperative and void against any person but the maker and his heirs or devisees, or persons having actual notice, and shows that the provisions are not to be restricted to those who are in some sense parties to the deed, or can claim rights under it. And under a similar statute in Maine it was held that a policy, which provided that any change in the title to the property should avoid it, was made void by the absolute deed of the assured, though he took back a bond to reconvey which was not recorded. Tomlinson v. Monmouth Ins. Co., 47 Me. 232." Foote v. Hartford Ins. Co., 119 Mass. 259, 260.

"This action is upon a policy of fire insurance in the Massachusetts standard form, containing a condition that 'this policy shall be void if, * * * without the assent in writing or in print of the company, * * * the said property shall be sold,' etc. The policy was upon a building, and was issued to one Lane, who then owned the property, subject to a mortgage to the plaintiff, and the policy was made payable to the plaintiff, 'mortgagee, as its interest may appear.' The mortgage contained a power to sell the property for a breach of the condition, and to convey to the purchaser an absolute title in fee simple, such that the mortgagor would be forever barred 'from all right and interest in the granted premises, whether at law or in equity.' Afterwards the plaintiff foreclosed the mortgage for a breach of the condition, and sold the property under the power, and became the purchaser at the sale. This was done without the knowledge or consent of the defendant, and the plaintiff has since held the estate under the title acquired by the sale. The question is whether this was a sale within the meaning of the word as used in the policy.

"We see no good reason for doubt in regard to it. Coupled with the interest conveyed to the mortgagee was an independent power to make an absolute sale of the property, which should convey all the title, both of the mortgagor and the mortgagee. If any other person than the mortgagee had bought at the sale, there

can be no question that the transfer would have been of a perfect title. The transaction is not changed in character or legal effect by the fact that the mortgagee became the purchaser.

"Nor are the rights which the mortgagee would have had under the policy if the fire had occurred before the foreclosure of any consequence in the case. These rights were terminated and the ownership entirely changed and a new title created by the exercise of the power of sale. There was a sale of the property, within the meaning of the policy, without the consent of the defendant, and thereupon all rights under the policy came to an end." Boston Co-op. Bank v. Am. Ins. Co., 201 Mass. 350, 87 N. E. 594, 23 L. R. A. (N. S.) 1147.

In the case at bar we find, first, the procuring of the insurance by the plaintiff as sole owner, when in truth he had held a mortgage jointly with his wife, which had ripened into a sheriff's certificate by virtue of foreclosure proceedings, which certificate was held by plaintiff and his wife jointly. Indorsements were made and mailed to the plaintiff, and we assume from the testimony that with ordinary prudence and such knowledge as he had of the English language he understood their import. After the indorsements were received by him, he procured a sheriff's deed to be issued to himself and wife jointly, although he testifies that the wife had no interest in the property; yet the fact that she was a joint promisee in the note, one of the mortgagees in the mortgage and a grantee in the sheriff's deed, it is hard to conceive that she was not interested, and it seems reasonable to infer that the husband had knowledge thereof. The contract of insurance was entered into and issued to the plaintiff as sole owner, containing the provisions in the policy hereinbefore set forth. The provisions in the policy were placed there to enable the insurer to determine the extent of its risk and the nature and extent of the interest of the insured in the premises, and that it might have knowledge as to who was the holder of the title. When we remember the manifest object of such provisions and the explicit language used in the policy, we cannot escape the conclusion that the sale of the premises and the issuing of the sheriff's deed did render the policies void. It may be that great hardship is sometimes imposed on innocent people by reason of such provisions in insurance policies, but that does not justify courts in refusing to enforce con-

tracts as made by the parties if lawful. When the provisions are reasonable and tend to prevent incendiarism or carelessness which may inflict losses upon other persons' properties in the vicinity, their language should at least be given its usual and ordinary meaning. When a sale of property is thus made, it is a simple matter to obtain the consent of the insurer if its risk is not materially increased, and, if it is so increased, why should it be subject to a hazard that it has not assumed?

The Supreme Court of New York, passed upon a matter of similar nature and in which the policy provided that it should be void if any change other than by death of the insured should take place in the title of the subject of insurance, and the insured executed a deed of the property insured, in which his wife joined, conveyed to the son, intending thereby to prevent the enforcement of a certain judgment against the property. The deed was recorded, but no consideration was paid by the son, and there was no change of possession. The learned court held that it did constitute a change of title within the policy, rendering it unenforceable. Rosenstein et al v. Traders' Ins. Co. of Chicago, 79 App. Div. 481, 79 N. Y. S. 736.

At the close of all the evidence the defendant moved for a directed verdict upon the grounds that all the evidence submitted on the part of the plaintiff and all of the evidence in the case and that the undisputed evidence did not warrant the plaintiff in recovering. The view that we have taken in holding that the defendant was not notified of the change of ownership as required by the terms of the policy and that he was not then the mortgagee, but at the time of the procuring of the insurance he and his wife jointly owned the sheriff's certificate of sale and that they thereafter became purchasers at the foreclosure sale and obtained a sheriff's deed to the property and the negligence in failing to furnish the defendant with notice thereof, constitutes an absolute bar and precludes the plaintiff from recovering. In coming to that decision none of the other errors complained of by the appellant become material and controlling in this case. We have carefully observed each of the errors, but none of the errors assigned can possibly affect or control this decision, for the reason that the change of title is controlling and deprives the plaintiff from pursuing the right of recovery. The trial court did not err in directing the

verdict, and the order and judgment appealed from are hereby affirmed.

POLLEY, P, J., and CAMPBELL, ROBERTS, and RUDOLPH, JJ., concur.