THE UNION CENTRAL LIFE INS. CO. OF CINCINNATI, Respondent, v. CODINGTON COUNTY FARMERS FIRE & LIGHTNING MUT. INS. CO., Appellant

(287 N. W. 46.)

(File No. 8145.   Opinion filed July 15, 1939.)

*Arthur H. Hasche* and *Hanten, Hanten & Henrikson,* all of Watertown, for Appellant.

*Walter Stover,* of Watertown, for Respondent.

SMITH, J.   Predicated upon a "standard" or "union" mortgage clause attached to a fire insurance policy of the mortgagor, the learned trial court entered judgment for the mortgagee for the loss and damage occasioned by a fire which occurred after the mortgagee had taken title by foreclosure.   The appeal is by the defendant insurance company.

As its name indicates, the defendant is a county mutual insurance company organized under the provisions of §§ 9247 to 9263, inclusive, Rev. Code of 1919, (SDC 31.2701-31.2718).   In July, 1929, the owner of a farm dwelling became a member of defendant and there was delivered to him a policy of insurance protecting him against loss and damage by fire to his said dwelling for a term or period of five years.   The plaintiff was then the owner of a mortgage lien upon the said premises, and for its protection there was attached to said policy the following agreement:

"Loss if any under this policy shall be payable to the Union Central Life Insurance Company of Cincinnati, Ohio, mortgagee, as its interests may appear upon the following terms and conditions:

"First—This insurance, as to the above named mortgagee, shall not be invalidated by the failure to pay a premium or assessment, or by any act or neglect of mortgagor or owner of the property insured, nor by the occupancy of the premises for purposes more hazardous than are permitted by the terms of this policy, nor by any change in title or possession, nor by any foreclosure, except upon ten days' notice to said mortgagee, provided the said mortgagee shall notify this company of any change of ownership or increase of hazard which shall come to its knowledge.

"Second—In case there is other insurance upon the property hereby insured, this company shall not be liable under this policy, for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property insured.

"Third—Whenever this company shall pay to mortgagee, any sum for loss under this policy, and shall claim as to the mortgagor or owner, no liability therefor existed, it shall at once, and to the extent of such payment, be legally subrogated to all rights of the party to whom such payments shall be made under any and all securities held by such party on the property in question, for the payment of said debt. But such subrogation shall be subordinate to the claim of said party for the balance of the debt so secured.

"Fourth—Said mortgagee shall not become liable to this company for premiums, or for assessments.

"Attached to Policy No. 1430 in the Codington County Farmers Fire and Lightning Mutual Ins. Co. at the Watertown, S. D. Agency."

For convenience we hereinafter refer to said attached agreement as a "standard mortgage clause." Subsequent to the delivery of the above described policy, and on the 15th day of January, 1932, plaintiff instituted proceedings to foreclose its mortgage, and there was then attached to said policy an endorsement reading as follows:

"Notice received from Union Central Life Insurance Company, Cincinnati, Ohio, of intention to foreclose Mortgage, by Wallace E. Purdy of Brookings, S. Dak., attorney.

"Permission granted, Policy No. 1430 to follow party in interest. Mortgagee, or holder of Sheriff's Certificate of Sale.

"Date of endorsement Jan. 15, 1932."

Plaintiff-mortgagee purchased the property at the foreclosure sale, and sheriff's deed was issued to plaintiff in due course on the 14th day of February, 1933. Fire destroyed the dwelling on February 25, 1933. This action was brought by plaintiff for the purpose of recovering the amount of the insurance on the dwelling, being a lesser amount than the amount of plaintiff's mortgage. It is agreed that there was no delinquency under the policy or the law in the payment of premiums or assessments. Trial was had

before the court without a jury and, as heretofore stated, resulted in findings and judgment for the plaintiff.

The central contention of defendant is that the mortgage clause was avoided by the sheriff's deed.

The issues have led us to reexamine the nature and source of the rights of a mortgagee under the "standard mortgage clause" (Cf. § 9198, Rev. Code of 1919, SDC 31.2401), and to consider whether a county mutual insurance company has power to assume liability to a mortgagee under such a clause.

In the course of the opinion in the case of Ormsby et al. v. Phenix Insurance Co. of Brooklyn, 5 S. D. 72, 58 N. W. 301, 303, in speaking of a "standard mortgage clause" this court said: "It creates a new agreement with the mortgagees, the terms of which clearly indicate that it has no relation to the stipulations of the mortgagor as to the acts that will avoid the policy, so long as the mortgagees comply with their agreement. It is an independent agreement, partaking in no sense of the character of an assignment of the policy or of the usual clause of loss, if any, payable to the mortgagee. It is certain, therefore, that the mortgagees became insured under a new contract." The view thus expressed is supported by respected authority; Hastings v. Insurance Co., 73 N. Y. 141; Syndicate Ins. Co. v. Bohn et al., 8 Cir., 65 F. 165, 27 L. R. A. 614; Germania Fire Insurance Company of New York v. Bally, 19 Ariz. 580, 173 P. 1052, 1 A. L. R. 488; Magoun v. Firemen's Fund Insurance Company, 86 Minn. 486, 91 N. W. 5, 91 Am. St. Rep. 370; Federal Land Bank of Columbia et al. v. Atlas Assurance Company, 188 N. C. 747, 125 S. E. 631; Bacot et al. v. Phenix Insurance Company of Brooklyn, 96 Miss. 223, 50 So. 729, 25 L. R. A., N. S., 1226, Ann. Cas. 1912B, 262; Reed et al. v. Firemen's Insurance Company of Newark, 81 N. J. L. 523, 80 A. 462, 35 L. R. A., N. S., 343.

■ Re-examination of the provisions of our standard policy and this character of mortgage clause in the light of the reasoned and searching analysis of the authorities which have attacked the "independent contract theory" (Cf. Walker v. Queen Insurance Company et al., 136 S. C. 144, 134 S. E. 263, 269, 52 A. L. R. 259; 33 Col. L. Rev. 305, and also see Rev. Ed. Williston on Contracts, § 401-A, and Central Union Bank of South Carolina v. New York Underwriters' Insurance Company, 4th Cir., 52 F. 2d 823,

78 A. L. R. 494) has induced a conclusion that the essential elements of a contractual relationship between the insurer and the mortgagee are nonexistent, and that although the mortgagee acquires an independent status and separate rights under the contract and the law in the premises, the status is that of a third party creditor-beneficiary, and the rights accrue as benefits under the contract between the mortgagor and the insurer. The author in the Columbia Law Review supra says: "The operative acts in the instant situation are offer and acceptance between the mortgagor and the insurer as an incident to which a right is conferred upon the mortgagee. For the payment of premiums by the mortgagor, the insurance company undertakes to perform an act beneficial to a third party. There is no 'privity' between the latter and the insurer, for the promise to perform is made to the mortgagor, not to the third party."

The opinion of Mr. Justice Cothran in the case of Walker v. Queen Insurance Company, supra, contains the following lucid discussion:

"The contract of insurance was therefore for the mutual benefit of both mortgagor and mortgagee, and in no sense a contract between the mortgagee and the insurance company; the mortgagee being simply a third party who, by the contract between the mortgagor and the insurance company, acquired a beneficial interest in the policy, really as additional security to the bond or note secured by the mortgage. * * *

"Undoubtedly the mortgage clause conferred a substantial benefit or interest upon the mortgagee, but that may and often does happen by reason of the provisions of a contract between two other persons, and entitled the beneficiary of that provision to enforce his rights, not upon the ground that he has made a contract with such other person, for plainly he has not, but upon the familiar principle that, where a contract is made between two persons, which secures a benefit to a third person, who may have paid nothing for it, and may have been entirely ignorant of it, such third person may enforce the benefit which the contract contained in his favor. * * *

"The conception that the standard clause constitutes a new and independent contract, a breaking away from the plain and simple interpretation of the policy as being a contract between the

insured and the insurance company containing a special provision for the benefit of the mortgagee, upon which he is entitled to sue, is entirely due to a magnified estimate of the difference between an open mortgage clause and a standard clause, and an overfusion of thought between an independent contract and an independent cause of action. The difference between the two clauses affects only the character and extent of the benefit conferred, and does not in any wise convert what was before simply a benefit into a new and independent contract, where in neither case is there the semblance of a contract between the insurance company and the mortgagee. The fact that practically a limitless benefit is conferred by the standard clause upon the mortgagee makes it none the less a benefit, and, however limitless a benefit may be, it can never reach the dignity of a contract, where there is no contract."

Further analysis discloses that the concept of the standard mortgage clause as a third party beneficiary contract does not defeat the plain legislative and contractual intention to supply the mortgagee with independent separate rights enforceable in his own name unaffected by defenses predicated upon acts of the mortgagor. That the standard mortgage clause purposes to create comprehensive rights in the mortgagee is universally recognized. The mortgagee has an insurable interest in the property involved, and we know of no public policy or theory of law placing a limit on the provisions the parties to the contract are privileged to insert therein for the benefit of the mortgagee. By § 808, Rev. Code of 1919, SDC 10.0204, it is provided that "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." A cursory reading of the standard forms discloses an "express intention" to benefit the mortgagee. The fact that the policy as a whole provides for benefits to the mortgagor as well, is not significant. Thompson Yards, Inc., v. Van Nice et al., 59 S. D. 306, 239 N. W. 753. And clearly the words "at any time before the parties thereto rescind it" contained in § 808 supra, will not serve to defeat the intention of the Legislature and the contracting parties to provide for protection which may not be destroyed by the acts or the will of the mortgagor. The standard mortgage clause is provided by statute (§ 9198, supra) and constitutes the law governing the rights of the parties as well as their contract. Hronish v. Home Insurance

Company of New York, 33 S. D. 428, 146 N. W. 588. It provides, "* * * and this insurance, as to the interest of the mortgagee * * * shall not be invalidated by any act or neglect of the mortgagor * * *." If the mortgagee performs the conditions contained in the mortgage clause (Cf. Ormsby et al. v. Phenix Insurance Company, supra), a policy may only be rendered ineffective through a notice of cancellation as provided by the mortgage clause.

We turn now to consider whether the power of a county mutual insurance company to enter into a contract which included a standard mortgage clause is subject to question. If such a clause constituted a separate and independent contract of insurance between the insurer and the mortgagee, it could be contended with some force that contracts of insurance with nonmembers are ultra vires as to a county mutual insurance company. The mortgagee in the case at bar never became a member of the defendant and never signed an undertaking to assume liability for assessments described in § 9256, supra (SDC 31.2713). When the mortgage clause is recognized as a benefit to a third person contracted by the member and the corporation, all such obstacles disappear. The statutes do not expressly prohibit the use of such clauses by county mutuals. Practical reasons render it certain that the Legislature did not intend to deny such companies power to endorse the standard mortgage clause upon its policies. Considering the percentage of property which, according to common knowledge, is constantly mortgaged, it must be apparent that to hold that mutual companies could not write standard mortgage clauses for the benefit of mortgagees would amount to a sentence that such companies must withdraw from business.

We now come to a consideration of the effect of the sheriff's deed as between the defendant-insurer and the mortgagee. In the case of Belatti v. Western Grain Dealers' Mutual Fire Insurance Company of Des Moines, Iowa, 58 S. D. 404, 236 N. W. 367, this court used language subject to interpretation as a holding that delivery of the sheriff's deed to the mortgagee without notice to the insurer and subsequent notation of the change of ownership endorsed on the policy as provided by the standard mortgage clause relieved the insurer of the liability to the mortgagee. Such a holding was not necessary under the facts in that case. The

sheriff's deed there involved actually transferred an interest in the property to a stranger to the insurance contract. Thus it appears without question that the issues there presented were properly ruled in favor of the insurance company.

Sound practical reasoning and the current of authority is opposed to the language we used in the Belatti case. Kimberley & Carpenter, Inc., v. National Liberty Insurance Company of America, 5 W. W. Harr. 63, 35 Del. 63, 157 A. 730; Union Central Life Insurance Company v. Franklin County Farmers' Mutual Insurance Association, 222 Iowa 964, 270 N. W. 398; Union Central Life Insurance Company v. Clinton Mutual Insurance Association et al., 51 Ohio App. 20, 199 N. E. 223; Fort Scott Building & Loan Association v. Palatine Insurance Company, Limited, of London, 74 Kan. 272, 86 P. 142; Southern States Fire & Casualty Insurance Company v. Napier, 22 Ga. App. 361, 96 S. E. 15; Pioneer Savings & Loan Company v. St. Paul Fire & Marine Insurance Co., 68 Minn. 170, 70 N. W. 979; see note 45 A. L. R. 598.

The briefs discuss three minor contentions in support of appellant's major contention that the sheriff's deed avoids the mortgage clause. First, it is said that by the use of the word "mortgagee" in the clause, an intention is disclosed to benefit plaintiff in that capacity only, and he ceases to be a mortgagee as soon as he forecloses his mortgage. Second, it is contended that the transfer of title to the mortgagee constitutes a "change of ownership" within the conditions of the clause. Third, it is finally said that the foreclosure and deed constitute a voluntary destruction by the mortgagee of the right of conventional subrogation reserved to the insurer, and that it was not intended that the loss and damage should be paid to the mortgagee in cases where he claims there is no liability to the mortgagor, unless the insurer could be so subrogated.

The response of the courts to these contentions may be thus epitomized: It is concluded that the word "mortgagee" is a mere matter of convenient description or designation, and was not intended to limit the primary agreement to pay the loss to the beneficiary "as his interest may appear." It is held that provisions dealing with "change of ownership' 'apply only to strangers to the insurance contract and were inserted to permit the insurer to gauge the moral hazard involved and to select those with whom it will

contract. It passed judgment, so they say, upon the mortgagee when it wrote the policy. The transfer, they assert, does but operate to increase the interest of the mortgagee. Finally, it is said that the provisions for subrogation were inserted in contemplation of the incidents of the mortgage relation and the probability that the mortgagee would enforce his mortgage, and are intended to be subordinate to the right of the mortgagee to so protect his interest.

The conclusions thus advanced by the courts appear to us as sound, and insofar as our opinion in the case of Belatti v. Western Grain Dealers' Mutual Fire Insurance Company, supra, expresses a different view, it is expressly overruled. Because the issue is not here we need not speculate whether under any circumstances a right of subrogation survives the delivery of the sheriff's deed to the mortgagee. We are only called upon to determine whether such transfer of title avoids the mortgage clause, and we limit ourselves to the determination of that issue.

A further contention has had its weight with us in arriving at our conclusions. The phraseology of the standard mortgage clause, is not the product of casual or haphazard draftsmanship. Neither was it born of a single transaction. It has emerged from years of practical experience in writing contracts acceptable to the insurers and to mortgagors and mortgagees. Undoubtedly it was framed with knowledge of the incidents of the mortgage relation and in contemplation of the fact that a considerable percentage of the mortgagees insured thereunder would be forced to take title through foreclosure of the mortgages. It must be true that the clause was worded with full understanding that its terms, if ambiguous, would be construed most strongly against the insurer. In the light of these considerations, it is manifest that if it had been intended that the protection of the mortgagee should cease with the foreclosure of the mortgage or with the delivery of the sheriff's deed, that intention would have been expressed in unequivocal words.

The defendant further contends that no matter what the rule should be as to insurers of a different type, a mutual company should not be held liable after the mortgagee acquires title for the reason that its very existence depends upon assessments, and the mortgagee, not being liable for assessments, the company is without a source from which to collect a proportionate share of its losses

after deed has issued to the mortgagee. That the mortgagee never becomes liable for assessments is evident. Farnsworth v. Riverton Wyoming Refining Co. et al, 35 Wyo. 334, 249 P. 555, 47 A. L. R. 1114. This contention, however, ignores the fact that the benefits to the mortgagee flow from the agreement between the mortgagor and the company, and rest upon the agreement of the mortgagor to pay premiums and assessments. The insurer is answerable to the mortgagee under his contract with the mortgagor, and so long as that liability remains in force the mortgagor is liable under his agreement, and under the statute, for premiums and assessments. If he refuses to pay he is subject to suit. § 9260 Rev. Code of 1919, SDC 31.2715. On the other hand, if the insurer finds itself in an insecure position so far as premiums and assessments are concerned, and feels that its right to make demand on the mortgagee or to sue the mortgagor will not insure ultimate collection, it is privileged to take advantage of its reserved right of cancellation.

█ A further assignment of error was not briefed or seriously argued, and is therefore deemed abandoned.

The judgment of the trial court is affirmed.

All the Judges concur.