## NATIONAL FIRE INSURANCE CO. OF HARTFORD, CONN., v. FINERTY INV. CO. et al.

No. 22479. Oct. 16, 1934.

Rehearing Denied Nov. 13, 1934.

Application for Leave to File Second Petition for Rehearing Denied Dec. 11, 1934.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

Ferguson & Semple, for defendants in error.

PER CURIAM. This is an action by mortgagees to recover on a fire insurance policy. In 1923, Mary E. Kemp negotiated a loan of $5,000 from the defendant Finerty Investment Company, securing said loan by a first mortgage on land she then owned in Bryan county. At the same time she gave the Finerty Investment Company a second or commission mortgage on the same land for $1,000. On June 6, 1923, the Finerty Investment Company sold the first mortgage to the Windsor Savings Bank, assigning the mortgage without recourse. Later, Mary E. Kemp sold and conveyed the land to R. L. McInnis. On April 26, 1926, at the instance of the agent of the Finerty Investment Company, R. L. McInnis made an application in writing to the National Fire Insurance Company, and was issued the policy of fire insurance sued on. The policy provided for insurance on the house on said land for the

amount of $1,500, and on the barn for the amount of $300. The Finerty Investment Company paid the premium. The policy contains a loss payable clause as follows:

"Loss or damages, if any, under this policy, shall be payable to Finerty Investment Company, or assigns, as mortgagee, as interest may appear; and this insurance, as to the interest of the mortgagee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall on demand, pay the same.

"Provided, also, that the mortgagee shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee, and unless permitted by this policy, it shall be noted thereon and the mortgagee shall on demand pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation, and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"It is further agreed, that in case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater proportion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by the party or parties in whose favor this mortgage clause is made.

"Whenever this company shall pay the mortgagee any sum for loss or damage under this policy, and shall claim that as to the mortgagor or owner, no liability therefor existed, and this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all the securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment, and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of its claim.

"Attached to and forming part of policy No. 131407 of the National Fire Insurance Co. of Hartford, Conn."

In the application for the policy, it is stated that there is a mortgage of $5,000 on the property.

In 1926, the exact date not appearing in the record, the Finerty Investment Company started foreclosure proceedings on its second mortgage. Notice of these proceedings being started was given to the insurance company's local agent. Judgment of foreclosure was taken on the second mortgage on February 7, 1927. Order of sale was issued on the decree in October, 1927. On November 14, 1927, the house described in the insurance policy and insured by its terms was wholly destroyed by fire. On November 28, 1927, at the foreclosure sale, the Finerty Investment Company bid in the property at $500. Later, the sale was confirmed by the court and sheriff's deed issued to the company. The $500 was credited on its judgment obtained in the foreclosure proceedings, which, at the time of the sale, including the interest, attorney fees, and court costs, aggregated $1,053.92. This left a balance, after crediting the judgment with the purchase price, of $553.92.

In 1928, after an unsuccessful effort to reach a settlement with the insurance company, the Finerty Investment Company filed suit on the policy. After the insurance company had answered, in effect, denying liability, the Finerty Investment Company, joined by the Windsor Savings Bank, asked and obtained permission of the court to join the Windsor Savings Bank as party plaintiff. This was done over the objection of the insurance company. At the trial a jury was waived and the court rendered judgment in favor of the plaintiffs for $1,500, the full amount of the insurance under the policy on the dwelling house. From this judgment the insurance company prosecutes this appeal. For convenience, the parties will be referred to as they appeared in the trial court. The insurance company seeks reversal on two propositions only.

"First Proposition. That the plaintiff Finerty Investment Company was entitled to recover only the sum of $553.92, the same being the amount of the balance due it upon its judgment of foreclosure of its mortgage upon the property covered by the policy of insurance involved herein." (p. 46, brief.)

"Second Proposition. That the plaintiff

Windsor Savings Bank was improperly made a party plaintiff, and had no right of recovery in any sum in this case, but that if this court should hold that the Windsor Savings Bank was a proper party and was entitled to recover, then there should be no judgment entered in favor of the Finerty Investment Company and the full amount of the judgment should have been in favor of Windsor Savings Bank." (p. 52. brief.)

The mortgage clause attached to the policy of insurance under consideration is what is known as the Standard or Union mortgage clause. Such a clause creates an independent contract between the mortgagee and its assigns, and the insurance company. In the case of Fidelity-Phenix Fire Ins. Co. v. Cleveland et al., 57 Okla. 237, 156 P. 638, this court in construing such a clause uses the following language:

"It has been almost unanimously held that such clause creates an independent contract of insurance for the separate protection and benefit of the mortgagee; and the fact that it is ingrafted on the contract of insurance contained in the policy issued to the owner and mortgagor does not affect its independent nature, except that reference will be had to the main body of the policy, to the end that the clause be made certain and effective. Under such a clause made for the separate benefit of the mortgagee, such person can maintain a suit in his own name to recover for a loss covered by the policy; and, under the very terms of the clause, this right cannot be invalidated by ' any act or neglect of the mortgagor or owner of the property insured'."

Abundant authority from the highest courts of other jurisdictions supports the conclusion reached by this court: Brecht v. Law Union & Crown Ins. Co., 18 L. R. A. (N. S.) 197 (to Circuit Court of Appeals of the United States for the District of Oregon); Eddy v. London Assur. Corp., 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686.

Such independent contract contemplates the possibility of foreclosure of the mortgage and affords full protection to the mortgagee or its assigns at all stages involved in such foreclosure.

"When an insurance contract provided for payment of loss or damage to a mortgagee as its interest might appear, and that the insurance should not be invalidated by any foreclosure or other proceedings or notice of sale, and after foreclosure sale and execution of a certificate of purchase to the mortgagee but within the statutory period of redemption the property was destroyed by fire, the insurance was still in force as respects the mortgagee as such purchaser." Trustees of Schools v. St. Paul Fire &

Marine Ins. Co., 1st syllabus, 296 Ill. 99, 129 N. E. 567.

The time of the fire and of the loss establishes the rights of the parties and the amount of the loss payable to the mortgagee or its assigns up to the sum fixed in the policy. Savarese v. Ohio Farmers Insurance Co., 260 N. Y. 45, 182 N. E. 665, 91 A. L. R. 1341.

The evidence in this case discloses that during the foreclosure proceedings begun by Finerty Investment Company, holder of second mortgage, and between the date when the order of sale was issued and the date of the day of sale as fixed in the notice of sale, the house covered by the insurance policy was wholly destroyed by fire. The trial court found the value of this house to be $2,500. The uncontradicted evidence shows that it was of the value at the time of the fire of $2,000 to $2,200. The evidence does not show the exact amount due on the date of the fire. It does show that on November 28th, the date of the sale, exactly two weeks after the fire, the amount due the Finerty Investment Company on its judgment, including interest, attorney fees, and costs, was $1,053.92; that sum less possibly two weeks' interest on the original judgment was due the Finerty Investment Company on the date of the fire, on which date, under the authorities, its rights are fixed. Therefore, the Finerty Investment Company was entitled to judgment on the mortgage still held by it against the insurance company for the amount due it on such mortgage.

This leaves for consideration whether the trial court erred in permitting the Finerty Investment Company, after the institution of this suit, to join with it as party plaintiff its assignee of the first mortgage, the Windsor Savings Bank, when such assignment was made some three years before the insurance policy sued on was issued. This exact question seems not to have been passed upon by the courts.

The following authorities, however, throw light upon the nature of the contract, and lead to the proper solution of the question:

"The effect of the mortgage clause hereinbefore set forth is to make an entirely separate insurance of the mortgagee's interest, and he takes the same benefit from his insurance as if he had received a separate policy from the company, free from the conditions imposed upon the owners." Eddy v. London Assurance Corporation, supra.

"It (the mortgage clause) was an in-

dependent agreement partaking in no sense of the character of an assignment of a policy of insurance, but one in which the mortgagees were recognized as a separate party, having distinct rights, and entitled to receive the full amount of insurance money, without any regard whatever to the owner of the property." Goldstein v. National Liberty Ins. Co. of America et al., 256 N. Y. 26, 175 N. E. 359.

"It (the mortgagee clause) created a new and distinct contract, which places the mortgagee upon another and a different footing from that of a mere assignee or appointee to receive the loss, and removes him beyond the control or effect of any act or neglect of the owner of the property, and renders such mortgagee a party who has a distinct interest separate from the owner, embraced in another and a separate contract. The interest of the owner and of the mortgagee are regarded as distinct subjects of insurance," Heilbrunn v. German Alliance Ins. Co. of N. Y., 202 N. Y. 610, 95 N. E. 823.

"May on Insurance (4th Ed.) vol. 2, sec. 424, says: 'That after the loss the mortgagor replaces the property in as good condition as it was before, or mortgagee, by selling other securities which he holds, reduces his debt, however it may affect the equities between him and the mortgagor, does not affect the terms of the contract between the mortgagee and the insurers. The contingency having arrived upon which the loss was payable, it must be paid according to the status of the interest at the time when the contingency happened; nor can the insurers require the mortgagee first to exhaust his remedy against the mortgagor before calling upon them for indemnity'." 91 A. L. R. 1344.

The evidence discloses that at the time the insurance policy was issued, the application plainly revealed that there was a $5,000 first mortgage on the land and the improvements. The evidence does not disclose the nature of the indorsement made by the Finerty Investment Company on the note transferred to the Windsor Savings Bank, but does definitely disclose that .assignment of the first mortgage was made without recourse. Therefore, in no event, would the Finerty Investment Company, so far as the record discloses, be liable to the first mortgagee, its assignee, on any deficiency arising in the event of the sale of the property by first mortgagee under its mortgage. But the fact remains that the property against which both mortgagees were looking for their respective security was depreciated in value by reason of the fire in the sum of at least $2,000, $500 more than the amount of insurance provided in the policy.

Therefore, the security afforded the second mortgagee was less in value by $2,000 by reason of the fire. We can see no good reason under these circumstances why the mortgage clause under consideration here, by which the loss was payable to the mortgagee or its assigns, should not protect the mortgagee and prior assigns as well as subsequent assigns. In re Hackbart (Iowa) 210 N. W. 544, 52 A. L. R. 895 (note), the second mortgagee, to protect himself, was required to redeem from the foreclosure of the first mortgage, paying the full amount of the debt to effect redemption. It was held that as against the claim of the owner, the second mortgagee was entitled to the benefit of the insurance which had been secured by the owner as required by the first mortgage and made payable to the first mortgagee. In the opinion, the court holds that the insurance money represents the building destroyed; that the second mortgagee as an involuntary purchaser of the premises to protect himself was entitled to the entire premises, a portion of which was represented by the insurance fund.

In that case the second mortgagee was not an assignee of the first mortgagee. There seems to have been no privity of relationship between them. The court reached its conclusion on the basis of the depreciation of the mortgaged premises by reason of the loss of the insured building. Full protection to the second mortgagee as contemplated by the policy and for which it paid the full premium necessary to secure such protection, under the circumstances shown by the evidence in this case, leads us to the conclusion that the trial court did not err in permitting the first mortgagee to be made a party plaintiff. The rights of the defendant were not prejudiced thereby. It had been paid by the second mortgagee for insurance on the house destroyed to the amount of $1,500. Whether that mortgagee or the first mortgagee is entitled to all of the amount of the loss is immaterial. The judgment of the trial court failing to set out just how much of the insurance each mortgagee was entitled to works no injury to the defendant. Neither mortgagee can hereafter make any claim on this insurance policy against the defendant. The judgment of the trial court should be and is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. H. Wilcox, John Adams, and

J. N. Springer in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Wilcox and approved by Mr. Springer and Mr. Adams, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.