279 So.2d 460

**NATIONWIDE MUTUAL FIRE INSUR-
ANCE COMPANY, a Corporation,**

v.

**Ethel B. WILBORN and State Farm Fire
and Casualty Insurance Compa-
ny, a Corporation.**

**SC 15.**

Supreme Court of Alabama.

June 21, 1973.

Marshall H. Fitzpatrick, Birmingham, for appellant.

Robert B. Propst, Anniston, for appellee, Ethel B. Wilborn.

C. William Gladden, Jr., Birmingham, for State Farm Fire & Casualty Co.

HEFLIN, Chief Justice.

This is an appeal from a final decree rendered by the Circuit Court of Calhoun County, Alabama, in Equity, denying appellant-respondent's (Nationwide) motion for a rehearing and fixing the amount of damages at $26,105. Appellee-complainant, Ethel Wilborn (Wilborn), filed a bill seeking a declaration of her rights of recovery for a fire loss to a residence on which fire insurance policies had been issued by Nationwide, and appellee-respondent, State Farm Fire and Casualty Insurance Company (State Farm). In addition to the two insurance companies mentioned above, Wilborn joined Robert and Katie Stewart (Stewarts) and the First National Bank of Anniston, Alabama (First National), as parties respondent. Of the four original respondents, only the two insurance companies have appeared in this appeal. At the time the State Farm policy was issued the Stewarts held an equitable interest in the insured property; however, it is not contested that they have no interest in this litigation. First National, although originally joined as a party respondent because it appeared as mortgagee in the Nationwide policy, has consented to the declaratory relief sought by Wilborn.

The chain of events which gave rise to this controversy began on March 27, 1970, when Wilborn and the Stewarts entered into a contract whereby the Stewarts agreed to buy, and Wilborn agreed to sell, certain property known as 21 Mont Camille Drive in Anniston for a purchase price of

$27,500. The Stewarts were obligated, as a part of the agreement, "to keep the property insured . . . in an amount not less than $25,500; loss payable to the party of the first part [Wilborn] as his interest may appear." Pursuant to this provision the Stewarts took out a policy of fire insurance with State Farm in the amount of $27,500, which went into effect on April 20, 1970. The State Farm policy contained what is known as the New York Standard Mortgage Loss Payable clause, usually referred to as the New York Standard Mortgage clause, naming Wilborn as mortgagee, which clause reads as follows:

"12. Mortgage Clause-Coverage A only: (This entire clause is void unless name of mortgagee (or trustee) is inserted in the Declarations) Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for the purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

Wilborn, prior to April 20, 1970, had procured on the same premises through Nationwide, a fire policy which also contained the New York Standard Mortgage clause naming First National, the institution through which Wilborn had originally financed the construction of the house in question, as mortgagee.

The sale of the insured property was cancelled on May 26, 1970, for reasons not here pertinent, and the Stewarts were relieved of any further liability to the vendor, Wilborn. On July 2, 1970, the fire loss made the basis of this suit occurred. Wilborn's bill sought recovery for this loss. The trial court rendered its amended final decree on September 3, 1971, declaring that "no coverage for the loss made the subject of this suit existed under the policy of insurance issued by State Farm" and that "Wilborn have and recover of Nationwide . . ., the sum of $28,795." The court's decree of November 4, 1971, denying Nationwide's motion for a rehearing, affirmed its former decree of September 3, 1971, except as to the amount of damages, which was reduced to $26,105. It is from this decree that Nationwide has appealed.

■ The principal point of dissension in the instant case is presented by Nationwide's assignment of error number 5 under which it argues that the trial court erred in holding that no coverage existed under the State Farm policy. Nationwide maintains that the New York Standard Mortgage clause in the State Farm policy constitutes a separate contract between State Farm and Wilborn, which is enforceable in favor of Wilborn; who occupied, in effect, the position of mortgagee, notwithstanding the fact that her interest in the insured property had increased or ripened into full ownership prior to the fire loss.

■ The question thus presented is whether the mortgagee may recover insurance proceeds under a policy containing a New York Standard Mortgage clause after the mortgage debt has been fully satisfied by foreclosure or otherwise.

From the language of the New York Standard Mortgage clause it is clear that the parties contemplated the possibility of foreclosure and that protection should be afforded the mortgagee or its assigns. National Fire Ins. Co. v. Finerty Investment Co., 170 Okl. 44, 38 P.2d 496 (1934).

The concept was that the insurance should follow the property. In Alabama there have developed two distinct (and distinguishable) lines of cases. One line allows the insurance to follow the property past foreclosure and may be classified as the "loss after foreclosure" concept. The other line of cases makes a difference if the debt owing to the mortgagee has been fully satisfied by foreclosure or otherwise following loss. This can be classified as the "foreclosure after loss" principle.

The first line of cases applies where the foreclosure occurs prior to the loss, and allows the mortgagee to recover the proceeds under the policy. Continental Insurance Company of New York v. Rotholz, 222 Ala. 574, 133 So. 587 (1931). In that case, Rotholz brought suit against Continental. The policy contained the New York Standard clause in which Rotholz was designated as mortgagee.

Within the policy coverage time and prior to the loss by fire the mortgagee, Rotholz, foreclosed and purchased the property at the foreclosure sale. The defendant, insurer, contended that there had been a change of ownership or occupancy by virtue of the mortgagee's foreclosure and purchase of the property at the sale; that the policy provided that the policy should be void in the event that the mortgagee fail to notify the insurer of such a change of ownership or occupancy; that no such notice was given, and, hence, the policy was void. This court, in answering these contentions and allowing recovery by the mortgagee, commented on the nature of the New York Standard Mortgage clause as follows:

". . . the New York Standard clause operates to create a *separate and independent* insurance of the mortgagee's interest in the property, and his acquisition of title to the insured property is generally regarded as an increase of interest rather than a change of ownership." (Emphasis added)

The fact that the mortgage debt had been satisfied prior to suit did not preclude recovery by the mortgagee under the policy where the loss occurred subsequent to satisfaction of the mortgage debt. The *Rotholz* holding was reaffirmed in Hartford Fire Insurance Co. v. Aaron, 226 Ala. 430, 147 So. 628 (1933), by way of dicta.

In *Rotholz*, the mortgagee had foreclosed prior to the fire loss and immediately before the loss in question occupied the position of owner, not mortgagee. The former mortgagee, the owner at the time of loss, had an insurable interest in protecting his property from loss by fire. The elevation of the mortgagee to the position of owner by foreclosure prior to the fire loss did not affect the operation of the New York Standard Mortgage clause which provided that:

". . . this insurance [the separate and individual insurance provision of the New York Standard clause], as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by . . . any foreclosure . . . ."

■ This provision has the effect of transferring the payment of the proceeds in the event of a fire loss to the owner where the mortgagee has foreclosed prior to the loss. Other jurisdictions which have considered the issue have interpreted this clause in the same manner as this court did in *Rotholz*. Union Central Life Ins. Co. v. Codington County Farmers Fire & Lightning Mutual Ins. Co., 66 S.D. 561, 287 N. W. 46 (1939); Guardian Savings & Loan Association v. Reserve Ins. Co., 2 Ill.App. 3d 77, 276 N.E.2d 109 (1971); National Fire Ins. Co. v. Finerty Investment Co., 170 Okl. 44, 38 P.2d 496 (1934); Prudential Ins. Co. v. German Mutual Fire Ins. Association, 231 Mo.App. 699, 105 S.W.2d 1001 (1937); Haskin v. Greene, 205 Or. 140, 286 P.2d 128 (1955); 5A Appleman, Insurance Law and Practice, Section 3403 (1970). Where there is a New York Standard Mortgage clause the rationale of

these cases protects the mortgagee after foreclosure or other change of ownership or title. In other words, the insurance follows the property even if foreclosure has occurred before loss.

Where, on the other hand, the loss precedes the foreclosure, the rule is different since the mortgagee has an election as to how he may satisfy the mortgage indebtedness by two different means. He may look to the insurance company for payment as mortgagee under the New York Standard Mortgage clause and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.

The second alternative available to the mortgagee is satisfaction of the mortgage debt by foreclosure. If the mortgagee elects to pursue this latter option, and the foreclosure sale does not bring the full amount of the mortgage debt at the time of the loss, he may recover the balance due under the insurance policy as owner. If the foreclosure does fully satisfy the mortgage debt, he, of course, has no additional recourse against the insurance company, as his debt has been fully satisfied. Aetna Ins. Co. v. Baldwin Co. Building & Loan Association, 231 Ala. 102, 163 So. 604 (1935).

The plaintiff in *Baldwin County* brought suit against Aetna on a policy containing a New York Standard Mortgage clause, in which it was named as mortgagee. The plaintiff-mortgagee had foreclosed and become the purchaser of the property *after* the fire loss made the basis of the suit. The New York Standard Mortgage clause contained in the policy was identical, in all material aspects, to the clause in *Rotholz*. The issue presented was stated as follows: ". . . whether plaintiff was shown to have a right to recover the amount of the loss thus insured, continuing up to the time of the beginning of the suit, or whether his right terminated by the foreclosure sale in which the plaintiff was the purchaser at the full amount of the debt."

This court in *Baldwin County* distinguished between satisfaction of the mortgage debt before the loss, and satisfaction of the mortgage debt *after* the loss, stating that in the former case, the mortgagee had been allowed recovery, while in the latter, the mortgagee has been denied recovery under the policy in the event of *full* satisfaction at foreclosure. The rule of law enunciated in *Baldwin County* may be stated as follows: Anyone designated as mortgagee in the New York Standard Mortgage clause forfeits his right to recover, under the policy, the amount of loss insured against, by foreclosure and purchase at the foreclosure sale or other *full* satisfaction of the mortgage debt, where such satisfaction occurs subsequent to the loss in question.

The rationale stated in *Baldwin County* is that at the time of, and immediately after the fire loss, plaintiff-mortgagee is the creditor of the owner, the plaintiff-mortgagee having had security for that debt in the form of a mortgage on the property and a claim for the loss on the insurance policy. *But in no event is the plaintiff-mortgagee due to collect more than the debt secured.* If the owner-debtor had paid plaintiff-mortgagee voluntarily, all of the plaintiff's rights and remedies would have immediately terminated, and he could not have proceeded further to enforce any feature of his security. When a mortgagee forecloses and at the sale he collects the *full* amount of his debt, he is no longer a creditor, as his debt is paid. The rationale and holding of *Baldwin County* appears to be in the mainstream of judicial thought throughout the country. Rosenbaum v. Funcannon, 308 F.2d 680 (9th Cir. 1962); Power Building & Loan Association v. Ajax Fire Ins. Co., 110 N.J.L. 256, 164 A. 410 (1933); Gattavara v. General Ins. Co., 166 Wash. 691, 8 P.2d 421 (1932); 5A

Appleman, Insurance Law and Practice, Section 3403 (1970).

Thus the status of the Alabama law relative to the effect of foreclosure on the mortgagee's right of recovery, under the policy, for damages as a result of injury to the mortgaged property, was clearly divisible into the two lines of cases discussed above. In the "foreclosure prior to loss" situation (*Rotholz*) the foreclosure (or other change or increase of ownership or change of title as contemplated by the loss payee clause) occurs in the context of the insured property existing in its undamaged condition and the satisfaction of debt takes into account the value of such property in its undamaged condition prior to loss and the need for the insurance to follow the property. In the "foreclosure after loss" situation (*Baldwin County*) the foreclosure occurs in the context of the insured property having been damaged and the satisfaction of the debt takes into account the damaged condition of the property at the time of such foreclosure. In the former situation (foreclosure prior to loss), the value of the undamaged property at the time of foreclosure is an incident to the satisfaction of the debt; while in the latter (foreclosure after loss), to allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to mortgagee's unjust enrichment.

It appears that these two lines of cases have established a general rule and an exception to the general rule where a policy contains a New York Standard Mortgage clause. The general rule is that this loss payee clause affords protection to the mortgagee as his interest may appear before or after foreclosure or other methods of change of ownership or title or other mediums of increased ownership of the mortgage property and the insurance follows the property; the exception to this general rule being that if the mortgage indebtedness is fully satisfied *after* loss by foreclosure or otherwise, then the insurance company is no longer liable to the mortgagee.

This court, therefore, holds that the mortgagee was covered by the State Farm policy at the time of the loss made the basis of this suit, as owner. This holding is further supported by the plain language of the policy itself which provides that "this insurance as to the interest of the mortgagee (or trustee) . . . shall not be invalidated . . . by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property . . . ."

State Farm argues that the case of Gordons Transports Federal Credit Union v. Alabama Farm Bureau Mutual Casualty Company, Inc., 278 Ala. 338, 178 So.2d 164 (1965) impliedly overruled *Rotholz* and is controlling in this case. The loss in *Gordons* was an automobile and that case is distinguishable from a factual basis. Further it does not appear that the policy there involved contained a similar loss payee clause.

Next, State Farm insists that the trial court was correct in holding that there was no coverage for the mortgagee, Wilborn, under the State Farm policy for another reason wholly independent of its argument concerning the New York Standard Mortgagee clause. It argues that where the policy contains a loss payable clause and provides for subrogation against the mortgagor, the insurer is not required to pay any loss to the mortgagee where there was no debt or mortgage subsisting at the time of the loss. The only case cited by State Farm in support of this proposition is Standard Fire Insurance Co. v. Fuller, 90 U.S.App.D.C. 300, 195 F.2d 782, a District of Columbia Circuit Court of Appeals case. This court finds this holding to be inapposite of the Alabama law discussed above, and has been unable to find an Alabama case in point, and counsel have cited none.

Counsel for State Farm makes the statement, in brief, that the Alabama case of North River Insurance Company v. McKenzie, 261 Ala. 353, 74 So.2d 599 (1954), supports the Fuller holding; however, this

court finds the two cases to be distinguishable. The McKenzie case involved a suit by the insurer against the insureds to recover, out of a judgment recovered by the insureds from the tort-feasor, the amount paid by the insurer on account of damages to the property insured. There is no tort-feasor in the instant case and obviously no recovery was had by the insured against any such third person. Hence, the trial court's holding cannot be supported by State Farm's argument that the insurer is not required to pay any loss to the mortgagee where there was no debt or mortgage subsisting at the time of the loss.

Having determined that at the time of the fire loss to Wilborn's property there were in force in her favor two policies of insurance on the burned dwelling, the question becomes whether Nationwide is entitled to a 12/23 apportionment of the amount fixed as damages. The State Farm policy contains the following provision:

"10. Apportionment:

(A) Loss by fire or other perils not provided for in 10(b) below; This Company shall not be liable for a greater

proportion of any loss from any peril or perils in this policy than:

(1) The amount of insurance under this policy bears to the whole amount of fire insurance covering the property, or which would have covered the property except for the existence of this insurance, whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured hereunder; nor

(2) For a greater proportion of any loss than the amount hereby insured bears to all insurance, whether collectible or not, covering in any manner such loss or which would have covered such loss except for the existence of this insurance."

The Nationwide Mutual policy contains a provision which is substantially identical to the State Farm clause:

"H. APPORTIONMENT: This Company shall not be liable for a greater proportion of any loss less the amount of deductible, if any from any peril or perils insured against in this form than (1) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, or which would have covered the property except for the existence of this insurance, whether collectible or not, and whether or not such other fire insurance insures against the additional peril or perils insured against hereunder, nor (2) for a greater proportion of any loss less the amount of deductible, if any, than the amount hereby insured bears to all insurance whether collectible or not, covering in any manner such loss, or which would have covered such loss except for the existence of this insurance; except if any type of insurance other than fire extended to cover additional perils or windstorm insurance applies to any loss to which this insurance also applies, or would have applied to any such loss except for the existence of this insurance, the limit of liability of each type of insurance for such loss, hereby designated as 'joint loss', shall be first determined as if it were the only insurance, and this type of insurance shall be liable for no greater proportion of joint loss than the limit of its liability for such loss bears to the sum of all such limits. The liability of this Company (under this form) for such joint loss shall be limited to its proportionate part of the aggregate limit of this and all other insurance of the same type. The words 'joint loss', as used in the foregoing, mean that portion of the loss in excess of the highest deductible, if any, to which this form and other types of insurance above referred to both apply."

█ If the policies of two insurance companies are in force at the date of the

loss and the status of the two insurers is that of insurers of the same property of the same insured against the same hazard, they are each proportionately and severally liable for the loss at the ratio which the amount of their respective policies bears to the whole insurance covering the property against the perils involved. Louisville Fire & Marine Insurance Co. v. St. Paul Fire & Marine Insurance Co., 252 Ala. 532, 41 So.2d 585 (1949).

State Farm contends that the two policies did not insure the "same insured" as required under *Louisville Fire & Marine*. It reasons that the loss, under Nationwide's policy, up to $18,889.44, was payable to First National under the loss-payable clause; whereas, State Farm's liability, if any, is solely to Wilborn as mortgagee. This argument is at odds with the evidence in this case, which made clear the fact that there was nothing due the bank under its mortgage at the time of the trial of the case, hence, the bank was not entitled to any portion of the proceeds of either of the two policies.

This court, therefore, holds that the Wilborn property was covered by two insurance policies against the hazard of fire, and that Nationwide and State Farm must share the liability on a pro rata basis. Nationwide is liable for 30,000/57,500(12/23) of the loss; and State Farm is liable for 27,500/57,500(11/23) of the loss. The plaintiff is further entitled to interest.

This cause is reversed and remanded with instructions for the trial court to enter a final decree for the plaintiff in accordance with this opinion.

Reversed and remanded with instructions.

MERRILL, HARWOOD and FAULKNER, JJ., concur.

COLEMAN, J., concurs in the result.