DELTA LLOYDS INSURANCE COMPANY, Appellant,

v.

SOUTHWEST SAVINGS ASSOCIATION, Appellee.

No. 19232.

Court of Civil Appeals of Texas, Dallas.

Oct. 12, 1977.

Rehearing Denied Dec. 8, 1977.

Robert M. Greenberg, Greenberg & Bach, Dallas, for appellant.

R. L. McSpedden, Collie, McSpedden & Roberts, Dallas, for appellee.

AKIN, Justice.

This is an appeal by Delta Lloyds Insurance Company from an adverse judgment in favor of Southwest Savings Association concerning a coverage question. Delta Lloyds issued to Joe Hambrick a fire insurance policy with a vandalism endorsement covering certain apartments located in Dallas. In April 1974, the property suffered hail damage for which a claim under this policy was paid. On October 1, 1974, Southwest Savings Association, the mortgagee, purchased the property at a foreclosure sale for $68,875.14, the amount of its unpaid mortgage. Later in October, still during the policy period, a vandalism loss occurred. Delta denied liability for the vandalism loss, and Southwest sued. Trial was to a jury which found that the reasonable cost of

repairing the apartments as a result of the vandalism was $60,000, but which also found that Southwest's failure to protect the property after the hail loss caused the vandalism loss. The trial court disregarded the last finding and rendered judgment in favor of Southwest for $60,000.

Delta asserts that Southwest may not recover under the policy because its mortgage interest had been extinguished at the time of the loss and it failed to protect the property after the prior hail loss as required by the policy. Southwest responds that its foreclosure prior to the loss should not affect its right of recovery as a mortgagee and that the mortgagee had no duty to protect the property against loss. We hold that if Southwest was covered after foreclosure, its coverage was as an owner rather than as a mortgagee and, consequently, it had a duty to protect the property from further loss following the hail loss. Accordingly, we reverse the judgment of the trial court and render judgment that Southwest take nothing.

■ The first question presented is whether the policy afforded coverage to Southwest after foreclosure. The policy contains a standard union mortgage clause, which provides:

*This policy, as to the interest of the mortgagee only* therein, *shall not be invalidated by any act or neglect of the mortgagor or owner* of the within described property, *nor by any foreclosure or other proceedings* or notice of sale relating to the property, *nor by any change in the title or ownership of the property,* nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; PROVIDED that the mortgagee shall notify this Company of any change of ownership *or increase of hazard which shall come to the knowledge of said mortgagee,* and unless permitted by this policy, it shall be noted hereon; and PROVIDED further that upon failure of the insured to render proof of loss, such mortgagee, upon notice, shall render proof of loss in the form herein specified within ninety-one days

thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit.

Failure upon the part of the mortgagee to comply with any of the foregoing obligations shall render the insurance under this policy null and void as to the interest of the mortgagee.

This policy may be cancelled as to the interest of any mortgagee named hereon by giving such mortgagee ten days written notice.

If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage.

The word "mortgagee" shall be construed to mean mortgagee or trustee. [Emphasis added]

The effect of this clause is to create two separate insurance contracts: one between the insurer and the owner, and one between the insurer and the mortgagee. *St. Paul Fire & Marine Ins. Co. v. Crutchfield,* 162 Tex. 586, 350 S.W.2d 534, 537 (1961); *Rio Grande Nat'l Life Ins. Co. v. Hardware Dealers Mutual Fire Ins. Co.,* 209 S.W.2d 654, 656 (Tex.Civ.App.—Amarillo 1948, writ ref'd n. r. e.).

Delta contends that Southwest's recovery is limited to the loss suffered in its capacity as mortgagee. Since Southwest's interest *as mortgagee* at the time of the loss—the amount of the indebtedness outstanding— was zero, Delta contends that Southwest is not entitled to recover under the policy. Delta reasons that because Southwest foreclosed its mortgage and purchased the property for the outstanding indebtedness, it had no interest as mortgagee since the debt was extinguished. In support of this proposition, it cites *Campagna v. Underwriters at Lloyds London,* 549 S.W.2d 17, 19 (Tex.Civ. App.—Dallas 1977, writ ref'd n. r. e.). *Campagna* is, however, not controlling.

There, the mortgagee foreclosed after the loss. We held that the mortgagee's interest was fixed at the time of loss, and since it had been compensated for that interest when it accepted the property in full satisfaction of the debt, it was not entitled to double recovery. Here, Southwest's interest at the time of the loss was its ownership of the property, not a lien, and it has not been compensated for its loss. *See Nationwide Mutual Fire Ins. Co. v. Wilborn,* 291 Ala. 193, 279 So.2d 460, 462 (1973).

■ Southwest contends that the policy only required the named insured as owner to protect the property and that it, as mortgagee, had no such duty. We cannot agree that the standard union mortgage clause can reasonably be construed as giving the mortgagee the rights of an owner after foreclosure and purchase without imposing on it the obligations of an owner. The contrary construction would leave the property after foreclosure with no one having both an obligation and an interest in protecting the property against loss, thus materially increasing the risk to the insurer. Accordingly, we hold that if the mortgagee, after foreclosure, claims coverage of losses occurring when it was the owner of the property at the time of the loss, it also has the owner's obligations under the policy, including the obligation to protect the property from and after the time it became the owner. To hold otherwise would increase the risk of the insurer in contravention of the policy terms.

Southwest also argues that under the union mortgage clause a mortgagee's insurable interest is not extinguished when its lien is foreclosed and it buys the property at a foreclosure sale, but rather is increased to that of an owner. In support of this contention, it cites such cases as *First State Savings Bank v. National Fire Ins. Co.,* 244 Mich. 668, 222 N.W. 116, 117 (1928); *Prudential Ins. Co. v. German Mutual Fire Ins. Ass'n,* 231 Mo.App. 699, 105 S.W.2d 1001, 1004–05 (1937); and *Nationwide Mutual Fire Ins. Co. v. Wilborn,* 291 Ala. 193, 279 So.2d 460, 463 (1973). No Texas cases following this rule have been cited to us. We

need not decide this question because we conclude that even if the mortgagee's interest is increased to that of an owner, its rights under the policy are then governed by the provisions of the policy applicable to an owner and its recovery is barred by its failure to protect the property from further damage after the hail loss, as found by the jury.

■ Delta contends that the trial court erred in sustaining Southwest's motion to disregard the jury's answer to issue number twelve (pertaining to Southwest's failure to protect the property) on the ground that Southwest was under no legal duty to save and preserve the property. The policy required the insured to "give immediate notice to this Company of any loss [and] protect the property from further damage. . . ." Special issue number twelve was submitted in the following form:

Do you find from a preponderance of the evidence that the loss in question was caused, directly or indirectly, by the neglect of Plaintiff to use all reasonable means to save and preserve the property at and after a loss that the property may have sustained prior to the loss in question and subsequent to December 15, 1973?

ANSWER: "We Do" or "We Do Not"
ANSWER: We do.

We hold that this finding establishes a breach of the policy by Southwest and, therefore, precludes its recovery. Southwest contends, however, that the answer to special issue number twelve cannot constitute a defense because the issue inquires about neglect occurring before Southwest became the owner and before it had any duty to protect the property from loss. We cannot agree. The issue inquires whether the vandalism loss was caused by Southwest's neglect in failing to protect the property after the prior loss in April 1974. According to the evidence, no loss occurred after the April 1974 hail loss until the vandalism loss in question, which the jury found occurred between mid-October and October 29 of 1974, when Southwest was owner. Indeed, Southwest's witness testi-

fied that no vandalism loss had occurred when he inspected the property on October 14, 1974. Since the only evidence of a vandalism loss was with respect to a loss between October 14, 1974, and October 29, 1974, the jury's answer to issue number twelve cannot be taken as a finding of a loss resulting from Southwest's failure to protect the property before October 14. Although the issue included a greater period of time than was properly applicable, the evidence was limited to the applicable period, and we cannot assume that the jury disobeyed the court's instruction to base their answer on the evidence. Perhaps, on proper objection, the court would have been required to confine the issue to the period between October 14 and October 29, but no such objection was made. Consequently, we hold that this finding under the evidence was equivalent to a finding that the loss resulted from failure of Southwest to protect the property during that period. Since we have held Southwest had a duty to protect the property during that period, it follows that the finding establishes a breach of the policy which bars its recovery.

Reversed and rendered.