693 So.2d 1386 (1997)
AMERICAN FIRE AND INDEMNITY COMPANY, INC.
v.
L. D. WEEKS.
2951395.
Court of Civil Appeals of Alabama.
May 9, 1997.
*1387 William F. Smith II, Birmingam, for appellant.
Shannon Mitchell, Boaz, for appellee.
YATES, Judge.
American Fire and Indemnity Company, Inc., appeals from a declaratory judgment entered in favor of L.D. Weeks.
The stipulated facts are as follows: American Fire issued to Timothy Swack and Frederica Swack a homeowner's insurance policy providing coverage for a dwelling. The Swacks owned the property and were the named insureds. The property was subject to a first mortgage securing a promissory note held by Weeks. Weeks required the Swacks to pay the premiums on the policy and also to list him as an insured as first mortgagee under the policy. The policy contained what is commonly called a "standard" or "New York mortgage" clause providing that losses are payable to the mortgagee and the named insured, as their interests appear. The policy had an effective coverage period beginning in December 1993 and ending in December 1994.
Mrs. Swack moved out of the dwelling in June 1994. In August 1994, Mr. Swack informed Weeks that he also was relocating. Weeks became concerned that the Swacks would be unable to continue making payments and that he would be forced to foreclose on the property. On August 21, 1994, Mr. Swack and Weeks began negotiating the sale of the property to Weeks, in lieu of foreclosure. Mr. Swack and Weeks orally agreed that the Swacks would deed the property to Weeks in return for satisfaction of the mortgage to Weeks and a second mortgage held by Associates Finance Company. The second mortgage secured a debt of $4,000.
On August 23, 1994, a fire caused substantial damage to the dwelling; however, the dwelling was not a total loss. After the fire, Weeks and the Swacks presented claims to American Fire under the subject policy. While the claims were being investigated, *1388 Weeks and the Swacks consummated their prior oral agreement. Weeks hired an attorney to conduct a title search and prepare a warranty deed. Weeks did not inform the attorney of the fire loss. On September 12, 1994, the Swacks executed a warranty deed to Weeks. In return for receiving clear title to the property, Weeks satisfied the first mortgage (held by him) and the second mortgage held by Associates Finance. After Weeks received title to the property, no money was owed on the property. American Fire was not informed of the transaction between Weeks and the Swacks until after it was consummated.
On November 28, 1994, Weeks sold the subject property, in its damaged condition, to Gary Stephens and Melissa Stephens for $20,000. Weeks hired an attorney to draft an installment purchase contract for the Stephenses to execute.
Weeks sought insurance proceeds from American Fire, contending that the "foreclosure after loss rule" was not applicable and that he was entitled to $17,395.18the difference in the $37,395.18 he had paid for the property and the $20,000 he had received from the Stephenses. American Fire filed a declaratory judgment action, seeking a judgment declaring that the "foreclosure after loss rule" bars Weeks from recovering any proceeds under the insurance policy. The trial court held that Weeks was entitled to $17,395.18 in proceeds.
Our supreme court established the "foreclosure after loss rule" in Aetna Ins. Co. v. Baldwin County Bldg. & Loan Ass'n, 231 Ala. 102, 163 So. 604 (1935). The rule provides that if there is a foreclosure upon mortgaged property after the property has sustained a loss or damage, the mortgagee may elect one of two remedies. The mortgagee may collect the insurance proceeds arising from the damage to the property, in satisfaction of the full mortgage debt, up to the limits of the policy. Alternatively, the mortgagee may seek repayment through a foreclosure sale. If the sale does not fully satisfy the debt, the mortgagee may recover the balance from the insurance proceeds. If, however, the sale does satisfy the debt, the mortgagee has no further claim upon the insurance proceeds. Id.; Ex parte Chrysler First Financial Servs. Corp., 608 So.2d 734 (Ala.1992).
Under the "foreclosure after loss rule," the mortgagee "forfeits his right to recover, under the policy, the amount of loss insured against, by foreclosure and purchase at the foreclosure sale or other full satisfaction of the mortgage debt, where such satisfaction occurs subsequent to the loss in question." Nationwide Mutual Fire Ins. Co. v. Wilborn, 291 Ala. 193,198, 279 So.2d 460, 465 (1973). Because the policy insures only the mortgagee's debt, full payment of that debt extinguishes the mortgagee's insurable interest and the mortgagee will not be allowed to recover insurance proceeds. Id.
The fact that the transaction between Weeks and the Swacks was not a formal foreclosure does not affect the application of the "foreclosure after loss rule." Although foreclosure is the most common scenario, our supreme court has recognized that any change or increase of ownership or change of title will bring this rule into effect. Id.; see also Smith v. Stockton, Whatley, Davin & Co., 487 So.2d 923, 925 (Ala.Civ.App.1985).
The actions of Weeks fall directly in line with the "foreclosure after loss rule." The dwelling was damaged on August 23, 1994. On September 12, 1994, Weeks took title to the property, by warranty deed. In return for receiving clear title to the property, Weeks satisfied the Swacks' first and second mortgages.
With full knowledge of the fire loss, Weeks elected to satisfy the insured debt by recovering the property. Therefore, under the "foreclosure after loss rule," Weeks no longer had an insurable interest under the policy.
Weeks insists that the "foreclosure after loss rule" is not applicable because, he says, the parties entered into the agreement before the loss. The agreement was an oral agreement and, as such, was void under the statute of frauds. Darby v. Johnson, 477 So.2d 322 (Ala.1985).
Weeks, relying on Ex parte Chrysler First Financial Servs., suggests that the "foreclosure after loss rule" should be applied *1389 only when the mortgagee is aware of its existence and possible application. Weeks's reliance on that case is misplaced. In that case, our supreme court determined that the rule should be applied only when the mortgagee has "`full and clear understanding of the problem, facts and remedies essential to the exercise of intelligent choice.'" 608 So.2d at 737 (quoting Allstate Ins. Co. v. James, 779 F.2d 1536, 1539 (11th Cir.1986)). The court's rationale was premised on the fact that before the foreclosure Chrysler did not have knowledge of the loss. In this instance, Weeks had knowledge of the loss before he consummated the final agreement. Under such circumstances, he cannot escape the "foreclosure after loss rule." Pace v. Colonial Penn Ins. Co., 690 So.2d 369 (Ala. Civ.App.1996), writ quashed, 690 So.2d 373 (Ala.1997).
Accordingly, the judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, J., concurs.
CRAWLEY, J., concurs specially.
ROBERTSON, P.J., and MONROE, J., dissent.
CRAWLEY, Judge, concurring specially.
I agree with the majority opinion that the "foreclosure after loss" rule does apply in this case. I write specially to emphasize that the dissenting opinion states that the foreclosure after loss does not apply because Weeks and Mr. Swack "orally agreed that Mr. Swack would deed the property to Weeks" and that "Weeks at the moment of contracting immediately became the sole equitable owner of the Swacks' equity of redemption in the party." 693 So.2d at 1389 (footnote omitted). Even if Weeks and Mr. Swack had orally agreed for Mr. Swack to deed the property to Weeks, their oral agreement is not a legal contract. Ala.Code 1975, § 8-9-2, Alabama's Statute of Frauds, states in pertinent part:
"In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
"....
"(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller[.]"
The Statute of Frauds explicitly requires that an enforceable contract to convey real property must be in writing, and it is undisputed that, at most, Weeks and Mr. Sack had only an oral agreement to convey. Therefore, Weeks had no equitable title at the time of the loss, and the foreclosure after loss rule still applies.
ROBERTSON, Presiding Judge, dissenting.
I respectfully dissent. The majority incorrectly applies the "foreclosure after loss" rule to a situation not properly classified as a transfer occurring after a loss. The parties' agreed statement of facts indicates that Weeks and Mr. Swack orally agreed that Mr. Swack would deed the property to Weeks, the mortgagee, two days before the casualty made the basis of this action. There is no indication that the parties intended that this contract would in any way be conditional, or that they addressed the issue of insurance coverage between the time of the contract and the closing. Under these facts, Weeks immediately became the sole equitable owner of the Swacks' equity of redemption[1] at the moment of contracting, irrespective of the absence of a formal conveyance thereof.
*1390 The majority disputes the proposition that the oral contract between Swack and Weeks was immediately effective, citing Darby v. Johnson, 477 So.2d 322 (Ala.1985), a case discussing the operation of Alabama's Statute of Frauds; the special concurrence also relies upon the Statute of Frauds. However, in this case, it is undisputed that after the parties entered into their oral agreement to transfer the equity of redemption to Weeks, they consummated their oral agreementthe Swacks executed a warranty deed, and Weeks satisfied the outstanding mortgages on the property. Although the earlier parol agreement to convey may technically have been void under the Statute of Frauds at the time it was made, the parties' subsequent consummation of that agreement "related back" to the inception of the oral contract, taking it outside the Statute. See Cook v. Kelly, 200 Ala. 133, 134, 75 So. 953, 954 (1917). Thus, for purposes of our analysis, the mere form of the original accord between the parties is immaterial, and their transfer of the equity of redemption dates from before, not after, the loss, as a matter of law. Weeks, "as equitable owner[,] would bear the loss from a destruction of the property between the time of execution and the completion of the sale" because the parties' contract was silent as to insurance. Alabama Farm Bureau Mut. Ins. Co. v. Meyers, 516 So.2d 661, 662-62 (Ala.Civ.App.1987); see also Grass v. Ward, 451 So.2d 803, 805 (Ala.1984).
Because the loss occurred after Weeks had become the property's equitable owner, I believe that the applicable rule is the "loss after foreclosure" rule, which our supreme court has stated "allows the mortgagee to recover the proceeds under the policy" under the theory that his acquisition is an increase in his interest rather than a change in ownership. Nationwide Mut. Fire Ins. Co. v. Wilborn, 291 Ala. 193, 197, 279 So.2d 460, 462-63 (Ala.1973) (citing Continental Ins. Co. of N.Y. v. Rotholz, 222 Ala. 574, 133 So. 587 (1931)); see also Green v. Hemmert, [Ms. 2960033, Mar. 14, 1997] ___ So.2d ___, ___ (Ala.Civ.App.1997) (a purchaser in possession of property under an executory land sale contract is entitled as a general rule to insurance proceeds in the event of a loss to the property before transfer of legal title; citing Alabama Farm Bureau Mut. Ins. Serv. v. Nixon, 268 Ala. 271, 275, 105 So.2d 643, 646 (1958)).
Even were I convinced that the parties' subsequent fulfillment of the oral contract did not relate back to August 21, 1994, and that Weeks's insurable interest in the property was less than his basis of $37,395.18, I would still be of the opinion that Weeks is entitled to recover at least the uncompensated portion of the Swacks' original debt from American Fire and Indemnity. As the majority opinion notes, the mortgagee forfeits any right to recover under the insurance policy the amount of the loss "by foreclosure and purchase at the foreclosure sale or other full satisfaction of the mortgage debt." 693 So.2d at 1388 (emphasis added). In this instance, Weeks accepted a deed from the Swacks in lieu of foreclosure, after a loss had occurred, and then sold the property for $20,000; however, the Swacks' debt amounted to $33,395.18 at the time they conveyed their equity of redemption to Weeks.
I acknowledge that, applying the "foreclosure after loss" rule, Weeks's insurable interest under the policy was necessarily in his eventual payment by the mortgagors, and that Weeks as mortgagee would under no circumstances be entitled to receive more than $33,395.18 from the Swacks and American Fire together. However, even if I were to assume, as the majority concludes, that Weeks "foreclosed" after the loss by repurchasing and reselling the property, Weeks would nonetheless be entitled to recover the balance of the Swacks' debt from the insurance proceeds. See Aetna Ins. Co. v. Baldwin County Bldg. & Loan Ass'n, 231 Ala. 102, 103-4, 163 So. 604, 605 (1935). Because the Swacks owed Weeks $33,395.18 at the time of the loss, and Weeks received $20,000 for the property, Weeks would be entitled to recover the remaining deficit of $13,395.18 from American Fire and Indemnity, even under the "foreclosure after loss" rule applied by the majority in this case. Anything less would fall short of "full satisfaction" of the Swacks' debt.
The majority opinion allows an insurance company to evade its duty to pay a claim for *1391 a loss undisputedly falling within the terms of its coverage, by invoking a rule of law designed to prevent a mortgagee from receiving a windfall; yet, if American Fire and Indemnity is allowed to collect premiums for coverage and then to deny that coverage, then it is actually the insurance company that will have reaped a windfall here. Indeed, the majority denies the insured the amount he is entitled to receive, even assuming the applicability of the rule it applies. I would affirm the judgment of the trial court, or, in the alternative, would reverse and remand for the sole purpose of directing the entry of a judgment reducing American Fire and Indemnity's payment obligation by $4,000, the amount paid by Weeks to satisfy the Swacks' debt to Associates Finance.
MONROE, J., concurs.
NOTES
[1] "Alabama continues to be a `title theory' state where a mortgage operates to pass legal title to the mortgagee as security for the mortgagor's debt, leaving in the mortgagor the right to pay the debt and obtain a reconveyance or revestiture of the title upon retirement of the debt. The right to repay the debt and reacquire legal title is known as the equity of redemption." Jesse P. Evans III, Alabama Property Rights & Remedies, § 34.1, at 585-86 (1994).