Pauline Taylor executed an application for homeowner's insurance with Nationwide Mutual Fire Insurance Company ("Nationwide"). Taylor misrepresented in the application that she had not previously submitted claims for losses covered by insurance and that she had not had an insurance company refuse to renew another insurance policy. Unaware of these misrepresentations, Nationwide issued a policy to Taylor and her husband. Norwest Mortgage, Inc. ("Norwest"), which held the mortgage on the Taylors' home, was covered under that policy, pursuant to the following clause:
 "If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and you [the homeowner/insured], as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages.
 "If we deny your [the homeowner/insured's] claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
 "a. notifies us of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.
 "b. pays premium due under this policy on demand. if you have neglected to pay the premium.
 "c. submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Your Duties After Loss, Appraisal, Suit Against Us, and Loss Payment apply to the mortgagee.
 "If we cancel the policy, the mortgagee will be notified at least 10 days before the cancellation takes effect.
 "If we pay the mortgagee for a loss and deny payment to you:
 "a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
 "b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
 "Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim."
Norwest had no knowledge that the policy had been fraudulently procured. The Taylors' home was later damaged by fire. While investigating the loss, Nationwide discovered the misrepresentations and, based on Ala. Code 1975, §27-14-7,[1] refused coverage to the Taylors and Norwest. Nationwide then filed this declaratory judgment action, seeking a determination that the entire policy was void ab initio as a result of the misrepresentations in the application. The Taylors counterclaimed, seeking damages based on allegations of breach of contract and bad faith refusal to pay an insurance claim. Norwest also counterclaimed, alleging breach of contract. All the parties agreed that the material facts were undisputed and that the action involved a pure question of law that should be decided on cross motions for summary judgment filed by all the parties. The trial court entered a summary judgment for Nationwide, holding that the policy was void as a matter of law. Norwest appealed.[2] We reverse and remand. *Page 17 
The dispositive issue in this case is whether, as Norwest contends, the clause quoted above is in effect a "union" or "standard" mortgage clause, which, under Alabama law, constitutes a separate contract between a mortgagee and an insurer that is not voided under § 27-14-7 by an insured's misrepresentations in an insurance application, or whether, as Nationwide contends, the mortgage clause is a simple "loss payable" clause, which, under Alabama law, does not constitute a separate contract between a mortgagee and an insurer and, as a result, is not protected from the nullifying effects of § 27-14-7. See HomeLoan Finance Co. v. Fireman's Fund Ins. Co. of San Francisco,221 Ala. 529, 129 So. 470 (1930); Continental Ins. Co. of NewYork v. Rotholz, 222 Ala. 574, 133 So. 587 (1931); London Scottish Assurance Corp. of London, England v. Smith, 29 Ala. 556,158 So. 892 (1935); United States Fire Ins. Co. v. Hecht,231 Ala. 256, 164 So. 65 (1935); Liverpool London Globe Ins.Co. v. Dickinson, 242 Ala. 107, 5 So.2d 90 (1941); Piedmont FireIns. Co. v. Fidelity Mortgage Co. of Alabama, 250 Ala. 609,35 So.2d 352 (1948); Nationwide Mutual Fire Ins. Co. v. Wilborn,291 Ala. 193, 279 So.2d 460 (1973); Smith v. Aetna Ins. Co.,410 So.2d 11 (Ala. 1981); International Surplus Lines Ins. Co. v.Association Commercial Corp., 514 So.2d 1326 (Ala. 1987); see, also, 43 Am.Jur.2d Insurance, §§ 1042-45 (1982). The primary disagreement between the parties centers on the fact that the mortgage clause does not specifically state that the "mortgagee's interests shall not be invalidated by any act or neglect of the mortgagor," which, Nationwide argues, is common language used in "standard" mortgage clauses. Nationwide argues that the mortgage clause is a simple "loss payable" clause because it states in the first paragraph that "a loss payable . . . will be paid to the mortgagee and you [the homeowner/insured], as interests appear." According to Nationwide, this language defines the scope of the clause. Norwest contends, however, that other language in the clause clearly indicates that its interests under the policy survive wrongdoing on the part of the insulted during the application process.
After carefully examining the record and the briefs, we agree with Norwest that the mortgage clause constitutes a separate contract with Nationwide. The clause states that "[i]f we deny your [the homeowner/insured's] claim, that denial will not apply to a valid claim of the mortgagee, " unless the mortgagee fails to comply with the requirements of several specific provisions. The record indicates that Norwest was not in default under any of those provisions. We view the mortgage clause as doing more than making Norwest an appointee of the insurance fund, whose right of recovery would be no greater than the right of the Taylors. See 43 Am.Jur.2d Insurance, supra, at § 1043. Based on the clear language in the mortgage clause, we hold that a separate contract was created between Norwest and Nationwide — a contract that was not subject to the nullifying effects of § 27-14-7.
The summary judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, SEE, and LYONS, JJ., concur.
KENNEDY and COOK, JJ., concur in the result.
[1] Section 27-14-7 provides, in pertinent part:
 "(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policies or contract unless either:
"(1) Fraudulent;
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy, or contract, or the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."
[2] The Taylors did not appeal.