The defendants Carmela Bornacci and Joseph Bornacci, owners of property situate at Westfield, Union county, New Jersey, mortgaged same to Barbara Ritter. Complainant *Page 419 
issued its fire insurance policy to the owners. Attached to the policy was a standard mortgagee clause, loss payable to Barbara Ritter as first mortgagee, as her interest may appear.
The mortgagee foreclosed and at the sale bought the property. The sheriff's deed is dated July 21st, 1930, and was recorded August 13th, 1930. There was due on the mortgages at the time of the master's report, March 18th, 1930, for principal and interest the sum of $6,132.50.
May 12th, 1931, a fire occurred. Carmela Bornacci and Joseph Bornacci, no longer the owners of the property, filed a proof of loss reciting that they were the owners, and the loss was payable to Barbara Ritter as first mortgagee.
Complainant, by draft to the order of Carmela Bornacci, Joseph Bornacci, Barbara Ritter and the People's Adjustment Bureau, paid the fire loss in the sum of $2,525. The defendant Barbara Ritter procured endorsement on the draft of the other payees and retained the proceeds.
Decree pro confesso was entered against the Bornaccis.
The bill charges that complainant did not receive notice of the foreclosure and sale to Barbara Ritter, and so it issued its draft in payment of the loss in ignorance of that fact, believing at the time, that the Bornacci's were still the owners. It charges the proof of loss furnished was false and made with the willful and deliberate intent to gain an unfair and unjust advantage; that by reason of the sale of the premises, the contract of insurance set out in the mortgagee clause became void as to Barbara Ritter; that the filing of the proof of loss with the statements therein contained was a fraud upon complainant; that the foreclosure proceedings and the sale thereunder operated to extinguish the interest of the mortgagee and created a situation where complainant could not demand to be subrogated to the mortgagee's rights to the extent of the payment made to her, and that this was a violation of complainant's rights and an estoppel from denying its right to subrogation.
Complainant seeks a lien upon the premises and prays sale of the same to raise and satisfy the amount paid, with interest from June 5th, 1931, or in the alternative a money decree. *Page 420 
The mortgagee clause attached to the policy reads as follows:
"Loss or damage, if any, under this policy, shall be payable to Barbara Ritter as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.
Provided also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.
This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right, on like notice to cancel this agreement.
Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of her claim."
The mortgagee clause is what is known as "standard mortgagee clause," and has been held to create an independent contract of insurance for the separate benefit of the mortgagee. There exists an undoubted consideration for such contract, not dependent upon the contract with the owner. It insures the mortgagee's interest separately. If no proof of loss had been made by the owners, or if in fact no liability under the policy existed so far as the owners are concerned, the mortgagee could successfully maintain an action at law on her *Page 421 
independent contract. Reed v. Firemen's Insurance Company ofNewark, 81 N.J. Law 523.
There were two beneficiaries of the policy — owner and mortgagee — with distinct and dissimilar rights, but both had been accepted and approved by the complainant. When the complainant approved the mortgagee, it must have had in contemplation the natural and legal incidents growing out of the relation of mortgagor and mortgagee, namely, that for the protection of the lien legal proceedings might become necessary and that the mortgagee might become the purchaser of the property. When the mortgagee clause provided that the interest of the mortgagee would not be invalidated by any foreclosure, it must have contemplated a foreclosure terminating by a purchase of the property by the mortgagee, since a foreclosure terminating in the purchase by any other person would have divested the insurable interest of the mortgagee. No new person became a party to the insurance contract at the foreclosure sale, and there was no change of risk except by the wtihdrawal of the interest of the mortgagor and the increase of the amount of interest of the mortgagee. The parties to the contract were the same after the sale. The foreclosure did not constitute such a change of ownership as could invalidate the policy, though no notice of such foreclosure was given to the company.
The complainant claims an equitable right to subrogation, which right, if it exists, rests not in the contract but results from the circumstances of the case. The difficulty I find with this contention is, that the mortgagee clause itself provides "that no subrogation shall impair the right of the mortgagee to recover the full amount of her claim." The fire admittedly impaired the security of the mortgagee to the extent of $2,525. At the time of the fire she was, by the exercise of her legal and equitable rights, the owner of the premises and had an insurable interest in an independent contract from that of the owners with the complainant which was enforceable at law to the extent of the damage done by the fire. Under the terms of the contract between the parties I believe the equitable right of subrogation is subject to the exercise by *Page 422 
the mortgagee of her legal rights. Prior to the foreclosure, in case of fire, complainant undoubtedly under the terms of the policy had a right to be subrogated to the rights of the mortgagee upon the payment of a fire loss.
The conclusion is arrived at that the equitable right of subrogation is subject to the exercise by the mortgagee of her legal right to foreclose and when that rights is exercised, the equitable right which had not then come into existence is extinguished.
The bill will be dismissed.