173 N.J. Super. 114 (1980)
413 A.2d 630
495 CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-RESPONDENT, AND JOHN L. CHMIELEWSKI, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 28, 1980.
Decided March 4, 1980.
*116 Before Judges SEIDMAN, MICHELS and DEVINE.
Chazkel and Gast, attorneys for appellant (Michael F. Chazkel on brief).
Gennet & Kallmann, attorneys for respondent (Stanley W. Kallmann on brief).
Defendant John L. Chmielewski did not file a brief.
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
The issue here, on which we have found no reported decision in this State precisely in point, and none has been cited to us by counsel, is whether a mortgagee, named as such in the mortgage clause of a fire insurance policy, who acquires title to the property prior to a fire loss by a conveyance from the owner in lieu of foreclosure, retains an insurable interest under the policy entitling it to recover for its loss. The insurance company rejected the mortgagee's proof of loss and refused payment on the ground that when the mortgagee accepted the deed in full satisfaction of the debt, it no longer had such insurable interest.
In the suit instituted by the mortgagee, plaintiff herein, the trial judge held on stipulated facts that coverage was afforded by the policy only to the extent of plaintiff's interest as mortgagee and thus it was entitled to be paid no more than the amount, if any, that was still due and owing on the mortgage after the conveyance.[1] Judgment was entered accordingly and *117 plaintiff appealed, contending that the insurer was obligated to pay it, within the policy limit, the full loss sustained.
Defendant John L. Chmielewski owned an apartment building in Newark. The fire insurance policy in question was issued to him by defendant New Jersey Insurance Underwriting Association on that building and on another one not involved in this litigation. The policy contained a standard mortgage clause naming Mohawk Savings & Loan Association as first mortgagee and plaintiff 495 Corporation, as second mortgagee. As indicated, during the term of the policy and prior to the loss Chmielewski, to avoid a foreclosure, conveyed the property to plaintiff in satisfaction of the second mortgage, but subject to the first mortgage. Chmielewski makes no claim to any part of the insurance proceeds.
The standard mortgage clause[2] provided, among other things, that the loss, if any, under the policy would be payable to the named mortgagee "as interest may appear under all present or future mortgages upon the property," and that the insurance, as to the interest of the mortgagee, would not be invalidated by any act or neglect of the mortgagor or owner, or any foreclosure *118 or other proceeding or notice of sale, or by any change in the title or ownership of the property. The clause also required the mortgagee to notify the insurer "of any change of ownership ... which shall come to the knowledge of said mortgagee ... otherwise this policy shall be null and void."
In reaching his conclusion that the insurer was not liable to plaintiff except possibly for the amount that might still be owed by the mortgagor, the trial judge relied upon Whitestone S. & L. Ass'n v. Allstate Ins. Co., 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (Ct.App. 1971), as "compelling authority." He held in his letter opinion that while under the mortgage clause the insurer's obligation to plaintiff would have survived a conveyance to a third party, a foreclosure proceeding or a foreclosure sale that did not satisfy the mortgage debt, the insurer's obligation here, according to Whitestone, was extinguished by the conveyance which discharged the mortgage debt. He concluded that "plaintiff stands no higher than a third party grantee of the insured would, that is, it is not an insured and is barred under the terms of the policy...." We do not agree.
Whitestone proceeds from the premise that "[b]ecause a mortgagee is entitled to one satisfaction of his debt and no more, the bidding in of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted a satisfaction of the debt." 28 N.Y.2d at 335, 321 N.Y.S.2d at 864, 270 N.E.2d at 696. According to the Whitestone court, the theory of recovery by a mortgagee is indemnity against an impairment of the mortgaged property which adversely affects the mortgagee's ability to resort to the property as a source for repayment. Thus, where the debt has been satisfied in full subsequent to a fire "neither reason nor precedent suggest recovery on the policy by the mortgagee." 28 N.Y.2d at 337, 321 N.Y.S.2d at 866, 270 N.E.2d at 697. The court added by way of caveat, however, that this did not necessarily mean that the insurer *119 would not be obligated to pay the mortgagor or some other person under the policy. See Moke v. Whitestone S. &. L. Ass'n, 82 Misc.2d 396, 370 N.Y.S.2d 377 (Sup.Ct. 1975), aff'd, 51 A.D.2d 1005, 382 N.Y.S.2d 289 (App.Div. 1976), aff'd 41 N.Y.2d 954, 394 N.Y.S.2d 881, 363 N.E.2d 587 (Ct.App. 1977), which held that since a post-fire foreclosure and purchase by the mortgagee is deemed to be a full satisfaction of the mortgage debt and a termination of the mortgagee's insurable interest, the property owner and not the mortgagee is entitled to the fire insurance proceeds.
Mention should also be made of the single reported New Jersey case on the subject, Power B. & L. Ass'n v. Ajax Fire Ins. Co., 110 N.J.L. 256 (E. &. A. 1932), which is cited in Whitestone. Although it is not clear whether the mortgage provision in that case was the standard one or the "open loss payable clause," it appears that the mortgagee foreclosed the mortgage after a fire had occurred, purchased the property at the foreclosure sale, and later sued the fire insurance company when its claim to be compensated for the fire loss was rejected. The court ruled against the mortgagee, holding that "if the sale brought enough to pay the plaintiff's debt in full, that wiped out any liability on the part of the insurance company, for, clearly, the plaintiff could not recover at the foreclosure suit the full amount of its mortgage, thereby having the debt for which the mortgage was given as security entirely satisfied, and then in addition recover from the insurance company the amount of money provided for in the policy." 110 N.J.L. at 258. See, also, Lutheran Brotherhood v. Hooten, 237 So.2d 23 (Fla.Ct.App. 1970); Lembo v. Parks, ___ Mass. App. ___, 372 N.E.2d 1316 (Ct.App. 1978); Ben-Morris Co. v. Hanover Ins. Co., 3 Mass. App. 779, 333 N.E.2d 455 (Ct.App. 1975); Hellman v. Capurro, 92 Nev. 314, 549 P.2d 750 (Sup.Ct. 1976).
*120 Whitestone and other cases like it are clearly distinguishable from the one involved here in that in those cases the fire loss occurred before the mortgagee acquired title to fire-damaged property by purchase at foreclosure sale or otherwise for the full amount due on the mortgage. The interests of the parties with respect to fire insurance are to be fixed at the time of the casualty. Cf. P.R. DeBellis v. Lumbermen's Mut. Cas. Co., 77 N.J. 428, 435 (1978); Wolf v. Home Ins. Co., 100 N.J. Super. 27 (Law Div. 1968), aff'd o.b. 103 N.J. Super. 357 (App.Div. 1968). There can be no doubt that at the time of the fire loss a mortgagee can make claim under the fire insurance policy and receive payment, within the policy limits, up to the amount of the mortgage debt, with the excess, if any, going to the mortgagor or, if there is one, a second mortgagee also named in the policy. But, as explained in Chicago v. Maynur, 28 Ill. App.3d 751, 755, 329 N.E.2d 312, 315 (Ct.App. 1975), the theory of such cases as Whitestone, where there is a post-fire foreclosure and purchase for the full amount of the debt, "is that the value of the security in its damaged condition was at least equal to the amount of the indebtedness, and therefore by taking the damaged property the mortgagee received the amount owed it, the debt was extinguished and the mortgage had no further insurable interest." See, also, Calvert Fire Ins. Co. v. Environs Develop. Corp., 601 F.2d 851, 856 (5 Cir.1979).
Thus, Whitestone and other cases of like import, by reason of their factual difference, have diminished value as precedents in determining whether the trial judge here correctly ruled as he did, in view of the mortgagee's acquisition of title in lieu of foreclosure before the fire loss. It is a fact, however, that a holding similar to that reached in Whitestone is found in cases in some jurisdictions where the mortgagee has taken title through foreclosure or otherwise in full satisfaction of the mortgage debt, and a fire loss occurs thereafter. But other courts have held that in such instances the mortgagee may nonetheless *121 recover under the standard mortgage clause of a fire insurance policy. The divergence stems largely from the construction courts have given to the provision in the standard mortgage clause that the loss shall be payable to the mortgagee "as interest may appear." One view, of which Rosenbaum v. Funcannon, 308 F.2d 680 (9 Cir.1962), is a leading exponent, derives from the concept that "interest" refers to the debt owed to the mortgagee, so that the satisfaction of the debt terminates the interest. See Northwestern Nat'l Ins. Co. v. Mildenberger, 359 S.W.2d 380 (Mo. Ct. App. 1962). The other, espoused in Nationwide Mut. Fire Ins. Co. v. Wilborn, 291 Ala. 193, 279 So.2d 460 (Sup.Ct. 1973), and its progeny, is that the word refers to the mortgagee's interest in the property itself and the protection of the policy does not cease with the foreclosure sale or other method of acquiring title, even though the debt is satisfied thereby.
In Rosenbaum v. Funcannon, supra, the dispute over fire insurance proceeds was primarily between the owner of the fire-damaged property and the holder of a note secured by a deed of trust (comparable to our mortgage). The owner sought to recover the insurance proceeds on the ground that the note secured by the deed was fully paid and discharged after the fire when the trustee, under his power of sale, sold the property to the mortgagee for the full amount of the debt. The mortgagee intervened, claiming to be entitled to the amount of the debt at the time the fire occurred. Although the case appears to be factually similar to Whitestone in that it also involved a post-fire acquisition of title by the mortgagee, the court, in finding for the owner, added a new dimension by holding, partly as dictum, that a full or partial satisfaction of the debt itself, whether prior or subsequent to the loss, precluded, to the extent thereof, any recovery by the loss-payable mortgagee, otherwise there would be double recovery. 308 F.2d at 684. The rationale was that since the mortgagee bid what she thought the security property was worth in its damaged condition at the time of the *122 bid, to allow her to recover the insurance proceeds and at the same time to have the property would result in a double recovery. This holding is consistent with other post-fire foreclosure cases, but the dictum regarding its applicability where the satisfaction of the mortgage debt takes place before the fire loss is not further explained.
Similar dictum appears in Equitable Life Assur. Soc. v. Great Atl. Ins. Co. of Del., 69 Misc. 714, 330 N.Y.S.2d 840 (Sup.Ct. 1972), aff'd 337 N.Y.S.2d 983 (App.Div. 1972), which dealt with a pre-fire foreclosure sale at which the mortgagee purchased the mortgaged property for less than the amount due, leaving a deficiency. The mortgagee sued the fire insurance company when the latter refused to pay because the mortgagee was now the owner of the premises and therefore, it contended, no longer insured as a mortgagee. The court found in favor of the mortgagee on the specific ground that to the extent a deficiency exists after foreclosure and sale, the mortgagee has an insurable interest. But the court unnecessarily added that, conversely, it is the full or partial extinguishment of the debt itself, prior to or subsequent to the loss, which precludes to the extent thereof any recovery by the mortgagee. As in Rosenbaum, the court gave no reason for extending the concept to cases where the mortgagee's acquisition of title, in full satisfaction of the debt, preceded the fire. Cf. Insurance Co. of No. Amer. v. State S. & L. Ass'n, 425 F.2d 1180 (7 Cir.1970).
It is evident from a close examination of these cases that the courts have made the purchasing mortgagee's right to recover under a fire policy dependent upon the continued existence of the creditor-debtor relationship of the mortgagor and mortgagee. We have no difficulty with this approach in cases where the mortgage debt has not been fully satisfied and a deficiency remains for which the mortgagor is still liable. The cases on the subject all agree that the mortgagee who has taken title to the property for an amount less than the debt owed can recover in the case of a fire loss to the extent of the balance due on the *123 mortgage, with the excess, if any, paid to the mortgagor. We can also understand the Whitestone rationale as long as it is limited to a post-fire acquisition of title for the full amount owed. But we do not believe that the same approach is tenable where, as in the case under review, a mortgagee takes title to the mortgaged property, whether by foreclosure or by conveyance in lieu of foreclosure, in full satisfaction of the debt, and a fire loss occurs thereafter. In our view, it is not the relationship between the mortgagor and the mortgagee that should govern in such case; that relationship has plainly been terminated. Rather, we must look to the rights and obligations of the mortgagee and the insurance company under the mortgage clause of the fire insurance policy.
The standard mortgage clause creates an independent contract of insurance, for the separate benefit of the mortgagee, engrafted upon the main contract of insurance contained in the policy itself. Reed v. Firemen's Ins. Co., 81 N.J.L. 523, 526 (E. & A. 1910); 5A Appleman, Insurance Law and Practice (Rev. 1970), § 3401 at 292; 1 Glenn on Mortgages, § 27.4 at 181 (1943). A consideration exists for such contract, not dependent upon the contract with the owner. Employers' Fire Ins. Co. v. Ritter, 112 N.J. Eq. 418, 420 (Ch. 1933). The incidents of such contract are set forth in Ritter:
There were two beneficiaries of the policy  owner and mortgagee  with distinct and dissimilar rights, but both had been accepted and approved by the complainant. When the complainant approved the mortgagee, it must have had in contemplation the natural and legal incidents growing out of the relation of mortgagor and mortgagee, namely, that for the protection of the lien legal proceedings might become necessary and that the mortgagee might become the purchaser of the property. When the mortgagee clause provided that the interest of the mortgagee would not be invalidated by any foreclosure, it must have contemplated a foreclosure terminating by a purchase of the property by the mortgagee, since a foreclosure terminating in the purchase by any other person would have divested the insurable interest of the mortgagee. No new person became a party to the insurance contract at the foreclosure sale, and there was no change of risk except by the withdrawal of the interest of the *124 mortgagor and the increase of the amount of interest of the mortgagee. The parties to the contract were the same after the sale. The foreclosure did not constitute such a change of ownership as could invalidate the policy, though no notice of such foreclosure was given to the company. [112 N.J. Eq. at 421]
In Ritter the fire occurred after the mortgagee had foreclosed the mortgage and bought the property at foreclosure sale. The recited facts do not disclose the amount of the bid or whether there was a deficiency, but it appears that the amount due on the mortgage at the time of the foreclosure was in excess of $6,000, and that the subsequent fire loss was $2,525. The case turned largely, however, on whether the mortgagee's purchase at a foreclosure sale was a change of ownership that would void the policy unless notice was given to the insurer, an issue which was resolved against the insurer. The court said, in this context, that at the time of the fire the mortgagee was, "by the exercise of her legal and equitable rights, the owner of the premises and had an insurable interest in an independent contract from that of the owners with the complainant which was enforceable to the extent of the damage done by the fire." 112 N.J. Eq. at 421. The court rejected the insurer's claim of an equitable right to subrogation, holding that under the mortgage clause subrogation would not impair the right of the mortgagee to recover the full amount of the claim, which was the amount of the fire damage.
While Ritter is not directly in point, it contains nothing that conflicts with our view that where a mortgagee acquires title to the mortgaged premises by foreclosure or otherwise in full satisfaction of the mortgage debt, and the property is thereafter damaged or destroyed by fire, the mortgagee continues to have an insurable interest and is entitled to be paid the full amount of the loss, although within policy limits and subject, of course, to the satisfaction of the claim of a superior mortgage. This is the position taken in Nationwide Mut. Fire Ins. Co. v. Wilborn, supra, the facts of which presented squarely *125 the question "whether the mortgagee may recover insurance proceeds under a policy containing a New York Standard Mortgage clause after the mortgage debt has been fully satisfied by foreclosure or otherwise." 291 Ala. at 196, 279 So.2d at 462.
Wilborn, the owner of the property in question, entered into a contract of sale with the Stewarts for a purchase price of $27,500. The purchasers were obligated under the agreement to keep the property insured against fire in an amount not less than $25,000. They took out a policy with State Farm Fire and Casualty Insurance Company which contained the standard mortgage clause naming Wilborn as mortgagee. Prior thereto Wilborn had procured a fire insurance policy from Nationwide, which contained the standard mortgage clause naming the First National Bank of Anniston as mortgagee. The sale of the property was cancelled and the Stewarts were relieved of further liability to the vendor. A fire occurred thereafter and Wilborn sued the two insurance companies to recover for the loss. The trial court found no coverage under the State Farm policy and entered judgment solely against Nationwide. The latter appealed, maintaining that the mortgage clause in the State Farm policy constituted a separate contract enforceable in favor of Wilborn, who occupied, in effect, the position of mortgagee notwithstanding that Wilborn's interest in the insured property had increased or ripened into full ownership prior to the fire loss. The Supreme Court of Alabama agreed and reversed, holding that at the time of the loss there were two policies of insurance in force on the burned building and that the two companies must share the liability on a pro rata basis. The reasoning of the court, as it applies to the State Farm policy, is pertinent here.
The court began by stating that from the language of the standard mortgage clause the parties clearly contemplated the possibility of foreclosure and that protection should be afforded the mortgagee or its assigns, the concept being that the insurance should follow the property. 291 Ala. at 196, 279 So.2d at *126 462. Two lines of cases were recognized. In one, classified as the "loss after foreclosure concept," the insurance was allowed to follow the property past foreclosure; in the other, known as the "foreclosure after loss" principle, a distinction was drawn if the debt owing to the mortgagee was fully satisfied by foreclosure or otherwise following the loss. Ibid. The court said that in the latter case the rule "in the mainstream of judicial thought throughout the country" is that when a mortgagee forecloses and at the sale collects the full amount of his debt he is no longer a creditor, as his debt is paid. 291 Ala. at 198, 279 So.2d at 464. The mortgagee may elect to satisfy the mortgage indebtedness by looking to the insurance company for payment under the standard mortgage clause and recovering, up to the policy limits, the full amount of the mortgage debt at the time of the loss, in which event there would be no additional recourse against the mortgagor. Alternatively, the mortgagee may choose to proceed by foreclosure. If the foreclosure sale does not bring the full amount of the mortgage debt, the mortgagee may recover the balance due under the insurance policy as owner. But if the mortgage debt is fully satisfied, there is no additional recourse against the insurance company. 291 Ala. at 197, 279 So.2d at 463. On the other hand, where the loss occurs subsequent to the satisfaction of the mortgage debt, the elevation of the mortgagee to the position of owner does not affect the operation of the standard mortgage clause. Instead, the clause has the effect of transferring the payment of the proceeds in the event of a fire loss to the mortgagee as owner. Ibid.
The court summed up its view of the state of the law as follows:
... In the "foreclosure prior to loss" situation .. . the foreclosure (or other change or increase of ownership or change of title as contemplated by the loss payee clause) occurs in the context of the insured property existing in its undamaged condition and the satisfaction of debt takes into account the value of such property in its undamaged condition prior to loss and the need for the *127 insurance to follow the property. In the "foreclosure after loss" situation ... the foreclosure occurs in the context of the insured property having been damaged and the satisfaction of the debt takes into account the damaged condition of the property at the time of such foreclosure. In the former situation (foreclosure prior to loss), the value of the undamaged property at the time of foreclosure is an incident to the satisfaction of the debt; while in the latter (foreclosure after loss), to allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to mortgagee's unjust enrichment. [291 Ala. at 199, 279 So.2d at 464]
See, also, Southeastern Fire Ins. Co. v. Belles, 373 So.2d 1089 (Ala. Civ. App. 1978); Union Central Life Ins. Co. v. Franklin Cty., etc., Ass'n, 222 Iowa 964, 270 N.W. 398 (Sup.Ct. 1936); First State Savings Bank v. National Fire Ins. Co., 244 Mich. 668, 222 N.W. 116 (Sup.Ct. 1928); Prudential Ins. Co. of America v. German Mut. Fire Ins. Ass'n, 231 Mo. App. 699, 105 S.W.2d 1001 (Ct.App. 1937); cf. Federal Nat'l Mtg. Ass'n v. Ohio Cas. Ins. Co., 46 Mich. App. 587, 208 N.W.2d 573 (Ct.App. 1973); Union Central Life Ins. Co. v. Codington Cty., 66 S.Dak. 561, 287 N.W. 46 (Sup.Ct. 1939); Delta Lloyds Ins. v. Southwest Sav. Ass'n, 559 S.W.2d 372 (Tex.Civ.App. 1977). Mention should be made, however, of cases in several jurisdictions which, though otherwise consistent with the Wilborn rationale, limit the purchasing mortgagee's recovery to the amount of the preforeclosure debt. See, for example, Federal Nat'l Mtg. Ass'n v. Great American Ins. Co., 157 Ind. App. 347, 300 N.E.2d 117 (Ct.App. 1973). The soundness of this holding is open to debate, but we need not dwell on it since, in the matter under review, the mortgagee acquired title, not by foreclosure, but by conveyance from the mortgagor in lieu thereof. Thus, in Guardian S. & L. Ass'n v. Reserve Ins. Co., 2 Ill. App.3d 77, 276 N.E.2d 109, 111 (Ct.App. 1971), where the mortgaged premises were damaged by fire shortly after the foreclosing mortgagee obtained a quitclaim deed from the mortgagor, the mortgagee-owner was held to be entitled to the proceeds of the policy, in that the mortgage clause was "clearly intended to cover the mortgagee's interest as it succeeded to *128 ownership through foreclosure." Cf. Union Central Life Ins. Co. v. Franklin Cty., etc., Ass'n., supra.[3]
We find the Wilborn rationale cogent. It is equitable, realistic and entirely consistent with the intent and purpose of the independent contract between mortgagee and insurer created by the standard mortgage clause. The insurer has been paid the premium for the risk it undertook, a risk which has in no way been enhanced by the mortgagee's assumption of ownership. The amount to be paid for the fire loss remains the same. All that has changed is that the former mortgagor does not participate in the distribution of the proceeds. If the insurer were to prevail on the facts here present, and escape payment of such loss as the mortgagee-owner may be entitled to, the insurer would benefit from an undeserved windfall.
We hold, therefore, that where, as here, a mortgagee acquires title to the mortgaged premises by a conveyance from *129 the defaulting mortgagor in lieu of foreclosure, and a fire occurs thereafter, the mortgagee-owner is entitled to be compensated for its loss, to the extent of available insurance moneys after payment has first been made to the superior mortgagee, if there is one.
The judgment is reversed and the matter is remanded to the trial court for a determination of the amount to be paid plaintiff. We do not retain jurisdiction.
NOTES
[1] An issue unresolved by the trial judge and left for future determination was whether the deed was given in full satisfaction of the balance due on the second mortgage or whether the mortgagor agreed to pay plaintiff $2,000 in exchange for the discharge of the mortgage debt. Although the appeal would thus appear to be interlocutory, we choose to consider it on the merits and, to that end, we grant leave to appeal nunc pro tunc.
[2] This clause, also referred to as the "union mortgage clause," is substantially the same as the standard clause in use throughout the United States. 29 N.J. Practice (Cunningham and Tischler, Law of Mortgages) (§ 164 at 741, 1975). There is an important difference between the standard clause and that which is known as the "open loss payable clause" in which the mortgagee cannot recover where the insured is barred from recovery and the indemnity of the mortgagee is subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in the mortgagor's hands. 5A Appleman, Insurance Law and Practice (Rev. 1970), § 3401 at 293. The rights of the parties under the standard clause will be discussed infra.
[3] In a few jurisdictions, the courts have held that where a mortgagee named in a standard mortgage clause purchases at a pre-fire foreclosure sale for the full amount of the debt, the mortgagee is protected to the full extent of the damage against a fire loss occurring before the expiration of the period during which, under the practice and procedure of the state, the mortgagor may redeem, but the insurable interest terminates thereafter. See Consolidated Mtg. Corp. v. American Sec. Ins. Co., 69 Mich. App. 251, 244 N.W.2d 434 (Ct.App. 1976); cf. Chicago v. Maynur, 28 Ill. App.3d 751, 329 N.E.2d 312 (Ct.App. 1975). The rationale for the holding cannot generally be gleaned from the opinions of the court, except for the Michigan case, in which the court justified the result solely on the ground that "This case is one which calls for some judicial line drawing, in the interest of wise social policy and in the interest of a clear rule of law to aid in the administration of justice." 69 Mich. App. at 259, 244 N.W.2d at 438. But see Pioneer S. & L. Co. v. St. Paul Fire & Marine Ins. Co., 68 Minn. 170, 70 N.W. 979 (Sup.Ct. 1897), where a mortgagee who purchased at foreclosure sale and a fire loss occurred after the expiration of the redemption period was held entitled to recover under the fire policy.